Ruffin, C. J.
 

 The controversy in this case turned upon the enquiry, whether Dupree received and held the slaves, as a gift or a bailment from the plaintiff. Therefore, although the case does not set forth the particular declarations of the plaintiff, which he proposed to prove by Mrs. Dupree,- we collect, that the object was to shew', that, a week or two before the plaintiff sent the slaves to his daughter or to her husband, he informed her of his intention to send them, and at the same time declared, that he did not intend them to be a gift, but a loan. That this is a just view of the question,-was admitted in the argument at the bar. This evidence was ruled ou-t. The objection to its admissibility, taken by the counsel on the trial, was only, that the declarations were not made in the presence of the son-in-law. But we gather, that the Court relied on the further ground, that the declarations were not made at-the time the possession of the negroes changed, and that they were not communicated to the son-in-law.
 

 It seems to the Court, notwithstanding those objections, that the evidence was relevant and competent. It is, in substance,- the point decided in
 
 Collier
 
 v Poe, 1 Dev. Eq.
 
 55.
 
 In that case it was held, that declarations of the father to his daughter, in the absence of the husband, that the negroes were lent and not intended to be given, rebutted the presumption of a gift, and converted the husband into a bailee; and that it was not material, that the husband should have been informed thereof, as the wife was the meritorious cause of the loan and had knowledge of it, and he came to the possession as husband. That case, therefore, is a direct author
 
 *279
 
 ity in this, as to the two grounds, that the father’s tion was declared to the daughter, and not to the husband; and that such declaration was never made known to him. It seems to be likewise opposite to the remaining ground, namely, that the period of the declarations was not exactly the same with that of the delivery of the slaves. In the marginal abstract of the case, it would appear to have been understood as that of. declarations
 
 “
 
 accorirpanying ” the delivery; so as to make a case of
 
 res gestee
 
 in the strictest sense. But the body of the report shews not so near an union between the declarations and the delivery ; for there it is said, that, when the negroes were
 
 u
 
 about being sent,” the father told his daughter that he lent them to her. But, independent the authority of cases, vie think it plain,- that, nothing else appearing, if a father, “a week or two beforehand,” tell, a child, that he intends to lend her some slaves and to send them to her at a particular time, and, when that time comes, the father accordingly sends them,- there is a fair ground of rational inference, that the slaves were sent upon the terms and according to the intention, with which the father had said he would send them.- It is admitted that the point enquiry is, whether, at the time of delivery, a gift or a loan Was meant. Formerly in this State the former was presumed. . In Yirginia, it seems, the presumption is the other way. Surely such
 
 prima facie
 
 presumption of a loan is fortified in a candid mind, by knowing that the father, with a view to an early change of the possession, expressly told the child, that he intended a loan and not a gift, and, that, in fact, the possession was changed so soon afterwards and without any apparent difference in circumstances, as not lead to the supposition of a charge in the father’s mind the mean-while.- What the party says,- at the time of an act, it is well known, is to be heard in explanation of it. But the rule cannot reasonably be restricted to
 
 the
 
 very moment the act. It must be sufficient, that the previous declaration of intention had a direct reference to the future act, the
 
 *280
 
 character of which is in dispute; shewing that the act was ^ien *n contemplation of the party, and that the declaration was made with the view of qualifying the act and of informing the person, to whom the declaration was made, of the real character of the act, whenever it should be done. There can be no arbitrary rules, therefore, as to the precise time, within which the declarations must be made before the act, so as to be admissible. The natural import of an act ought not to be affected by remote general declarations. But, here, the connection between the intention declared by the father and the sending of these slaves is not dubious, vague or remote, but is direct, plain and almost immediate. He said, that in a short time he would "send certain slaves
 
 to his
 
 daughter, and that they would be sent on loan. In a fortnight he did send them: are we not to infer, that he sent them on loan, as he had declared ? It is upon this principle that the declarations of a bankrupt, before the act of bankruptcy, are received. They shew with what intention the act was subsequently done.
 
 Robson
 
 v
 
 Kemp,
 
 4 Esp. Rep. 233. And from the cases of
 
 Ridley
 
 v
 
 Gude,
 
 9 Bing. 349, and
 
 Rawson
 
 v Haigh, 2 Bing. 99, it appears that there is no positive rule as to time, provided the declarations are connected with the act, by appearing to have been made with a view to the particular act in question and for the. purpose of marking the intention of the parly in the act, when it should be done. If these declarations had been made to the son-in-law himself, every one would feel the force of the presumption, that when the father so soon afterwards sent the ne-groes to the son-indaw, he intended to place them in the possession of the son-in-law, and the latter to accept them, on the terms and no other; on which the parties had previously agreed. The declarations would be deemed substantially
 
 pars res gestee,
 
 although
 
 not made at
 
 the instant of the change of possession. For the change of possession was that very act, in reference to which the party had declared his intention; and, therefore, presumed to have been executed with that intention. Now, as before-said, a declaration of
 
 *281
 
 a father to the daughter was held, and with plain propriety, in
 
 Collins
 
 v Poe, to be the same as a declaration to the husband, as respects the point now under consideration. The Court is, therefore, of opinion, that there was error in rejecting the evidence of Mrs, Dupree.
 

 We think the testimony of the son, as to the advice given by him to the plaintiff, not to claim the negroes nor object to the hiring by the administrator,' was properly ruled out. It does not follow, that the plaintiff acted on the bad advice of his son and not on his own judgment. It was between themselves and cannot affect the rights of others. It was likened at the bar to' the point ruled in
 
 Jones
 
 v
 
 Sasser,
 
 1 Dev. & Bat. 452. But the cases are essentially different. There, the advice was from the father himself, that a conveyance, which he proposed to execute to all his children, would not affect one he had before made for some of the same property to the plaintiff; who was induced thereby not to make known his title nor oppose the new deed. Those claiming as volunteers under the second and subsequent deed were properly affected by the conduct of their donor. If the present defendant had told the plaintiff, that his claim should not or would not be impaired by his not then making it publicly known,'the cases would be now nearly parallel. The private consultations between the father and the son, not communicated to the persons assembled nor to the person, who was dealing with the slaves as his own, stand on the same grouud with his plaintiff's own inward thoughts, or, at least, with his own conclusion, made known to the son, but adopted on his own judgment and without the concurrenbe of the son.
 

 Per Curiam, Judgment reversed and venire de nova awarded.