Spalding, J.
A majority of the members of this court find no difficulty in pronouncing the law, arising upon the facts in this case, to be with the plaintiff. Indeed, it appears to us that the whole question involved in the present controversy, has been twice, virtually, decided here.
In Canal Boat Etna v. Treat, 15 Ohio Rep. 585, the late Chief Judge (Birchard), in giving the opinion of the court, that Treat, who had built the boat under a contract with Standart, Griffith & Co., had no lien thereon, after delivery, for the.contract price, says: “A transfer-by Treat to any person, or under any circumstances, without notice of those debts, or the assent, expressly or tacitly given by them, would not have prevented Standart, Griffith & Co., or the hands that labored upon the boat, in assisting to build her, from attaching and, selling her under the statute, to satisfy their claims. The object of the act .was to provide a remedy for those who otherwise might be defrauded, hindered or delayed in collecting their just claims, and to save them the inconvenience of seeking out the owners, and subjecting them to the payment of the debts contracted by their authority.”
And afterwards, when the same case was reviewed by this court, Treat v. Canal Boat Etna, 16 Ohio Rep. 276, my learned associate, Judge Avery, who took no part in the first decision, when affirming the same, takes occasion to say: “ But we think that a suit for materials or labor would Jie against the builder; and that it could clearly be maintained, *202 under this statute, against the boat, in whatever hands she 'might be found. Upon this last point, neither the language nor meaning can admit of any doubt.”
It will be found that, in both instances, Read, Judge, dissented. But he differed in opinion with the other judges, in this only: that he construed the statute as giving a lien upon the boat to the master builder, who contracted to deliver her, when finished, to Standart, Griffith & Co., as well as a lien to the common laborers and material men.
It is proper to remark also, that the present chief judge, who does not acquiesce in the opinion which I am instructed to pronounce, took no part in deciding the case of the boat Etna, having been of counsel for the plaintiff.
The act of 1840, upon which this suit is founded, although somewhat objectionable for- its want of precision and clearness, is nevertheless an honor to our state legislation Our statute books are filled to overflowing with enactments in aid of individual and associated wealth. Our books of reports teem with adjudications necessarily tending to “ make the rich richer;” but instances are rare where the wants of him “ who earns his bread by the sweat of his brow,” are humanely cared for by the law-making power; or where the rights of labor have borne unquestioned competition with privileged capital, in the judicial forum.
The act which we are considering, was intended to secure to honest industry the fruits of its hard earnings, against either the fraud or failure in business of all such as might put it in requisition.
It is a statute of so highly beneficial a character, as to justify a court in giving to its construction the most liberal intendment to carry out its objects.
It provides “ that steamboats and other watercraft, navigating the waters within or bordering upon this state, shall be liable for debts contracted on account thereof, by the master, owner, steward, consignee or othe? agent, for materials, sup *203 plies, or labor, in the building, repairing, furnishing, or equipping the same,” etc.
And it further provides that “ any person having such demand; may proceed against the owner or owners, or master of such craft, or against the craft itself.
It surely requires no stretch of ingenuity to bring the claim of plaintiff within the intendment of this act. It does, in fact, fall naturally within its letter.
The claim is for a debt accruing to the plaintiff, for labor performed on the brig Andes, a watercraft, in the building thereof.
But it is insisted, by counsel for defendant, that the labor was not performed “ on account of” the vessel, but “ on account of” Arnold, who took the contract to build the vessel; and that the words in the statute are equivalent to “ on the credit of; ” and that where the evidence shows that credit was not given to the craft, the case is not provided for by the statute.
The construction asked for by counsel, would render the statute, in most cases, of no effect. There would not be found more than one instance in one hundred, where the individual performing labor on a vessel, or furnishing materials for her construction, would give the credit, in the first place, to the vessel herself; and if he did, where would the proof come from ?
The mechanic or material man necessarily makes his contract with some person who acts in behalf of the vessel, and has an interest in her construction. This may be the ultimate owner, the contemplated master, or “ any other agentf who controls the whole or any portion of the work. It may be a contractor or a sub-contractor.
This is not, however, a sensible interpretation of the statute. The language is, that “ steamboats and other watercrafts shall be liable for debts contracted on account thereof by the master, owner,” etc. Is it for a moment to be supposed that the master or owner of a vessel would hire a ship-carpenter to flank the deck, or perform any other work necessary to be done in building and repairing vessels, and at the same time tell the *204 mechanic that he is to work, not on the credit of his employer, but on the credit of the vessel itself ? The idea seems most preposterous. The plain and obvious import of this language in the statute is, that the watercrafts shall be liable for debts contracted in and about themselves, either in putting them together originally or in repairing them afterwards.
It is insisted further, that Arnold was neither one of the persons enumerated in the first section of the statute, as competent to render the vessel liable.
It would appear to the court, from an examination of the contract exhibited between Arnold and Lewis & Beardsley, that it was contemplated quite early in the transaction that some of the under contractors or day-laborers would be wronged out of their wages — for it was stipulated that “ the vessel, frame and materials should remain in the possession of Lewis & Beardsley as fast as got out or put together.”
And this is said to be stipulated as a guaranty that the vessel should be finished. It is more reasonable to suppose that Lewis & Beardsley felt that they were dealing with an irresponsible man, and, that they might be secure in their advancements, they stipulated for the ownership and possession of the vessel from the laying of the keel upwards; and the incautious laborers were notified in writing, that they must not look to the work of their own hands for their pay.
From their abundant caution in the matter, Lewis & Beardsley have brought themselves most clearly within the meaning of the statute, as the owners of the Andes, when the labor was performed therein by the plaintiff; and if the vessel should not sell for enough to pay the debt, they would, within our jurisdiction, be compelled to make good the deficiency.
At all events, it is adjudged by this court, a majority concurring, that for labor performed upon a watercraft in Ohio, the craft is made liable by our statute, no matter at whose instance the labor be performed, so that the contracting party have, at the time, the rightful control of the craft, or of that portion of the craft on which the work is expended. And this *205 liability will adhere to the craft, no matter through how many hands she passes, until the debt be paid, or the lien-holder relinquish his claim.
It is said by the court in Missouri, where they have a lien law like our own, “ purchasers must exercise ordinary diligence, and, knowing that boats and vessels are subject to liens, notwithstanding they are out of the possession of those entitled to the liens, they should indemnify themselves against losses which may be caused by their existence.” 9 Miss. Eep. 68.
The case of Southwick v. The Packet Boat Clyde, 6 Blackford’s Rep. 148, is cited by counsel for defendant, as a counter decision upon the construction of a similar statute.
We hold the decisions of a sister state in high respect, and have therefore examined the statute of Indiana with care. We find that, by the law of that state, boats and vessels are liable only for such debts as may be contracted by one of three individuals : master, owner, or consignee.
The claim of Southwick did not arise under a contract made with either of these, and the court ruled that it was not a lien. Possibly we might have brought our minds to a different conclusion under that statute.
It is claimed, also, that the plaintiff has an appropriate remedy under the act of 1843, “ creating a lien in favor of mechanics and others in certain cases.”
We have no doubt that he might at one time have had a concurrent remedy under this last named act. That is, he might have transmitted his account for work on the brig, to the owners at Oswego, in the State of New York, and if afterwards he could have found these owners within our jurisdiction, he might have compelled them, perhaps, to pay the amount, they being required by the law to withhold the sum due the laborer from the amount stipulated to be paid the contractors.
But it is only necessary to state' the facts in the case before the court, to show the utter folly of attempting to build an argument upon the law of 1843. That law can only be made effectual to secure the claim of mechanics where all parties live *206 within our jurisdiction. Besides, this last statute contemplates a claim and a judgment against the person. The proceeding? under the act of 1840 are mainly in rem.

Judgment reversed.