Battle, J.
 

 We understand that the counsel for the par
 
 *343
 
 ties agree to waive all objections to matters of mere form in tbe first count of tbe plaintiff’s declai'ation, and the first and seconds pleas of tbe defendant, that tbe cause may be decided on its merits as arising from those parts of tbe pleadings, without reference to tbe sale of tbe defendant’s stock.
 

 The first count of tbe declaration is upon a special contract, which it alleges, that tbe defendant has broken, by having failed to pay, when called upon, the instalments (except the first) becoming due, from time to time,'on his subscription for stock according to the terms of the charter which gave a corporate existence to the plaintiff.
 
 ¡
 

 The first plea denies the liability of the defendant, for the ■reason, that at the time he made his subscription, he was assured by the agents of the plaintiffs that their line of road should be so located and established as to run through, or within half a mile of the town of Smithfield, in the couuty of. Johnston, and that he subscribed upon the express condition that the road should be so run, and not otherwise: Whereas, the line of the said road, as actually located and established, did not pass within two miles of the said town.
 

 The testimony offered in support of the issue raised by this plea, was, that at the time when he was about to subscribe for the stock, and before he made the subscription, Linn B. Saunders, one of the commissioners appointed to receive subscriptions at the town of Smithfield, by parol, informed and assured him, that the line of the road should run through that town, and that he made his subscription upon that assurance, and in consideration thereof.
 

 The plaintiff, admitting that the road did not run through the town of Smithfield, and that the testimony, if competent, was true, objected to its introduction, upon the ground, that the terms of the subscription were in writing, and could not, therefore, be added to or varied by parol proof. The general rule is undoubtedly such as is contended for by the plaintiffs, and the question is whether the present case is an admisssi-ble exception to it. We are clearly of opinion that it is not. The terms of the subscription, as expressed in writing, were,
 
 *344
 
 that the subscribers promised and agreed to take the number of shares of stock affixed to their respective names, according to the provisions of the act of the General Assembly, entitled
 
 “
 
 an act to incorporate the North Carolina rail-road company.” The provisions of that act, so far as the line of the road was concerned, were, that it was to run from the point on the Wilmington and Raleigh (now Wilmington and Weldon) railroad, where it crosses the river Neuse, in the county of Wayne, via Raleigh and Salisbury to Charlotte. The route between these
 
 termini
 
 and given points was designedly left to be as- ' certained and fixed by the engineers, upon actual surveys. The contract between the parties, then, was that defendant agreed to take the number of shares of stock for which he made his written subscription in a rail-road, the line of which was to run according to the directions of the charter. It forms no part of such directions, either expressed or implied', that the road was to pass through Smithfield. A stipulation that it shall pass through that town, must therefore be either an additional stipulation, or the variation of a former written one, and being by parol, is clearly inadmissible.
 

 The case differs very materially from those of
 
 Twidy
 
 v. Saunderson, 9 Ire. Rep. 5 ;
 
 Manning
 
 v. Jones, Busb. 368 ;
 
 Daughtrey
 
 v. Boothe, 4 Jones’ Rep. 87 ; where the parol contract, though made at the same time, and relating to the same subject-matter, was in its nature, necessarily separate and distinct from the written one.
 

 But supposing that we are mistaken, and that the testimony is competent, it may well be doubted whether it proves any contract, or is to be taken as an agreed condition between the agents of the plaintiff, and the defendant, that the road should run through Smithfield. The proof is, that one of the commissioners assured the defendant that the road should so run, and that he subscribed upon that assurance. Now, considering that one only of the three commissioners, who were required by the charter to take subscriptions at the town of Smithfield, made the assurance, the transaction has very much the appearance of its having been the mere confident expres-
 
 *345
 
 Bion of the opinion of the commissioner, that the road would bo run, and that the defendant, confiding in that opinion, made his subscription accordingly. If'such were the case, it was very clearly no contract to that effect between the parties. But whether that be so or nol, it does not appear that Linn B. Saunders, or any other single commissioner, was authoris-ed to make any sueh contract, or to stipulate for any such condition. The charter required that books for subscription should be opened at Smithfield, under the direction of John McLeod, Bythan Bryan, L. B. Saunders, Baldy Saunders, and Thaddeus
 
 W.
 
 Whiteley, or any three of them. If the commissioners thus appointed, or any three of them who acted, were authorised to make any sueh “assurances” as that, the benefit of which is claimed by. the defendant, it is impossible to suppose that either one of them alone had sueh authority ; for if any one of them had it, then each one of them might have had it; and thus, while one commissioner was assuring Mr. Leach that the road should pass through Smith-field, another might agree with Mr. A B that it shonld run by his farm, and the third might enter into a solemn contract with Mr. C D that it should pass right by the door of his mill-house ; while the relative position of the town, the farm, and the mill, might be such as to make it greatly inconvenient, if not impracticable, to accommodate all. An authority to agents that could lead to such consequences, would never have been expressly given by a principal, and we, therefore, cannot construe it to have been given byimplication. Our opinion, then, is, that the testimony offered by the defendant in support of the issue joined on his first plea, was incompetent ; but if in that we are mistaken, and it is admissible, it does -not sustain the defense set up under that plea. This makes it unnecessary for us to consider an additional objection made to it by the plaintiff;-that if such a condition were annexed to the defendant’s subscription, it was waived by his payment of five per cent on it at the time, and subsequently by his proxy assisting and voting in the meetings of the stockholders, which organised the company, without insisting on
 
 *346
 
 the alleged condition. His main ground of defense, the defendant insists upon under his second plea. It is admitted that the eastern
 
 terminus
 
 of the plaintiffs’ road was materially changed from the point designated in the charter, and the defendant contends that he was thereby released from the obligation to pay for the stock for which he had subscribed. The argument is, that the contract created by his subscription was that he would pay for the stock taken by him, if, or upon condition, that the road should be built according to the
 
 termini,
 
 and route prescribed in the charter, and, consequently, any material change, of either the
 
 termini
 
 or route, would be a failure on the part of the plaintiff, in the performance of a condition precedent, whereby he, the defendant, would be discharged from his part of the agreement. Or, in another view, it wordd be an attempt on the part of the plaintiffs’ to hold him bound by a contract into which he never entered.
 

 The question which the assumed defense raises is an important one, and we will now proceed to consider its validity.
 

 It may be conceded, at least for the sake of the argument, that if the Legislature of a State, grant a charter for building a rail road, turnpike, or canal, between certain termini, and along a certain route, upon the faith of which subscribers take stock, and afterwards, without the consent, and against the will of one, or more of the subscribers, the Legislature passes another act, changing such
 
 termini
 
 or route, both or either, of the dissenting stockholders may refuse to pay for the stock for which they had subscribed. Such was the decision of the Supreme Court of Georgia, in the case of
 
 Winter
 
 v.
 
 The Muscogee Rail Road Co.,
 
 11 Georgia Rep. 438, founded upon previous similar adjudications made in Massachusetts and New York. See
 
 Middlesex Turnpike Co.,
 
 v.
 
 Locke,
 
 8 Mass. Rep. 268 ;
 
 Same
 
 v.
 
 Swan,
 
 10 Mass. Rep. 385 ;
 
 The Hartford and New Haven Rail Road Co.
 
 v.
 
 Croswell,
 
 5 Hill. New York Rep. 386. The principle of the decision is that the stockholder, when called on 'to pay his subscription for the building of such a road, without his consent, may truly say, “
 
 non hmc i/n foedera
 
 veni.” Assuming then, this to be true,
 
 *347
 
 an interesting question may arise, whether the principle will apply to a case where the alteration of the line of the road is made by the company, without the consent, and against the will, of the stockholder, and also without the sanction of any legislative amendment of the charter. In the latter case there is certainly not the same necessity for protecting the dissenting stockholder, by holding him released from the obligation of paying his subscription. It is clearly settled that he may avail himself of the writs of prohibition or mandamus, as his case may require, either to prevent the corporation from doing him an injury, or to compel it to yield him a right. Tims in
 
 Blakemore
 
 v.
 
 Glamorganshire Canal Navigation,
 
 6 Eng. Con. ch. Rep. 514, Lord EldoN said, when the case was before him in one of its earlier stages, “ I have, therefore, stated, and I have more than once acted on the doctrine, that if a deviation from the line marked out by Parliament were attempted, I would, (unless the House of Lords were to correct me,) stop the further making of á canal which was in progress; and for this reason, that a man may have a great objection to a canal being made in one line, which he would not have to its being made in another, and particularly he might feel that objection in a case where parties, after obtaining leave to do one thing, set about doing another. It may, I admit, be of no greater mischief to A B, that the canal should come through the lands of C L>, than through those of E F; but to that, my answer is, that you have bargained with the Legislature that you shall do the act they have authorised you to do, and no other act.”
 
 We
 
 have adopted, and acted upon, at the present term, the principle thus laid down by one of England’s greatest Chancellors, by enjoining the Greenville and Raleigh Plank Road Company, from establishing and running a line of stages against the wishes of some of the corporators ; upon the ground that such an application of their funds was not authorised by their charter.
 
 Wiswall
 
 v.
 
 Greenville and Raleigh Plank Road
 
 Co., 3rd Jones’ Equity, (not yet reported,)
 
 Mayor and Aldermen of Norwich
 
 v.
 
 The Norfolk Railway Co.,
 
 30 Eng. Law and Eq. Rep. 120, also sanctions the
 
 *348
 
 doctrine that rail-way companies may be restrained by injunction from misapplying the funds of the company, (see the case at page 144.) The above are all cases of injunction, where rail-way, and other like companies, have been prevented, at the instance of persons interested, from doing wrong. The case of
 
 Regina
 
 v.
 
 The York and North Midland Railway Co.,
 
 16 Eng. Law and Eq. Rep. 299, shows, that in a proper case, a party interested may compel, by mandamus, a rail-way company to complete a railway which it has begun. It is true, that the case, though decided upon great consideration by the Court of Queen’s Bench with Lord Campbell at its head, was reversed in the Court of Exchequer Chamber; but solely upon the ground that the words of the act of Parliament, upon 'which the question depended, were not, and could not be, construed to be compulsory upon the company. See th;e case in 18 Eng. Law and Eq. Rep 199; see also
 
 Regina
 
 v.
 
 Great Western Rail-way Co., ibid,
 
 364. If the principle thus seemingly established by
 
 the greatest force of
 
 authority be correct, we cannot perceive why it did not furnish the defendant with ample means for preventing the wrong and injury of which he complains. Why should the Courts interpose or protect him, (to the-great detriment of the company, in depriving it of its funds,) by holding him discharged from his subscription, when he neglected to avail'himself of a
 
 remedy
 
 plain and ample ? We need not, however, answer this question. There is another objection to the defense, about which we do not entertain a doubt.
 

 To make his defense available, it is certainly incumbent on the defendant to show that the alteration in the Eastern terminus of the road, was made without his concurrence and consent. Such seems to have been the opinion ( f the Court of Appeals of South Carolina, in the case of the
 
 Greenville and Columbia Rail Road Co.
 
 v.
 
 Coleman,
 
 5 Rich. Rep. 118, where they say, at page 135, “ It would appear reasonable to say that, if the corporation did acts to which a member did not object, either because he was supine, or because he would not attend when he might, and should have done so, it would not be
 
 *349
 
 harsh to hold liim estopped from disputing his acquiescence, especially when liabilities, duties and burthens, might accrue thereby upon the corporation.” There is not a particle of proof — indeed, he has not alleged in his plea, that he ever made the slightest objection to thechangé; and the presump* tion is, in the absence of proof to the contrary, that he assented to it. Tie was, or might have been, present, either in person or by proxy, at the occasional meetings of the stockholders, (see
 
 London City
 
 v.
 
 Venacker,
 
 1 Ld. Ray. 500,) and yet we never hear of his having raised his voice a single time against the alteration which he now alleges to be so great a grievance to him. We hold then, that the matter pleaded by the defendant in his second plea, and admitted upon the trial, furnishes no defense against the plaintiffs’ action.
 

 Having coniined our attention'to the merits of the case, as we understand it to be submitted to us by the agreement of the counsel on both sides, we do not discover any error in the judgment rendered in the Court below, and it must therefore be affirmed.
 

 Per Curiam. Judgment affirmed.