The plaintiffs gave their note to the Atlantic and North Carolina Railroad Company for $250, and thereupon the plaintiff McRae, who was the principal in the note, claim to be entitled to two and a half shares of the stock of the said company. The stock was originally subscribed by a corporation called the Carolina City Land Company, and was a part of 250 shares subscribed by that corporation in 1856, and was taken on himself by the said McRae because he was a member of the said city corporation, and this amount was in proportion to his interest in the said company. The bill alleges that when the Carolina City Land Company made its subscription to the railroad stock, it did so upon the express promise and assurance made by the railroad company that no part of the subscription thus made should be called for until after the railroad company had expended $25,000 in making a wharf and other works necessary to their road at Carolina City, (396) and not even then until after the land company had time to make sales of their lots, and that when such sales were made the railroad company would take the notes of individuals given for lots in discharge of the land company's liability for their stock subscription. The bill further alleges that in May, 1857, the railroad company made application to the land company to have the notes of the individual stockholders taken with sureties for the proportionate share of their liability as stockholders in the said company subscription, and that the subscription *Page 312 
should then be credited with these notes as payments on that stock, and that the avowed reason for wishing this substitution was to enable the president of the railroad company to certify that the company subscription had been paid, for that until such certificate was made, the State's subscription for an amount double the installment of individuals then due could not, under the charter, be paid; that if the substitution should be made they would not call on the individuals for the money, but would still look to the land company as the real debtors, and would wait till the expenditure before that time stipulated should be made, and the sales made of town lots, and would then take the notes of persons to whom lots were sold; that on being asked by one of the board of directors of the land company to reduce this arrangement to writing, Mr. Whitford, the president of the railroad company, replied that "he preferred not to do so, because he could not then so clearly certify to the Governor, but at the same time pledged his word, and said he was authorized to pledge the directors to this arrangement"; that confiding in this solemn assurance, the arrangement had been entered into, and this, among other notes, was given in pursuance thereof; that subsequently, sales of town lots were made to an amount of between fifteen and eighteen thousand dollars, and the purchase money secured in good notes on individuals, and that accordingly these notes were offered to the railroad company in part discharge of the liabilities assumed by these individuals for the land company, but these were refused, the president of the railroad company remarking that the railroad (397) company were content with matters as they then stood, and would consent to no change.
The prayer is for an injunction to stay the collection of the judgment entered into on the note in the court of law, which was issued in vacation; and at this term the bill was answered by the railroad company, but as the case is decided entirely on the plaintiff's equity, as set out in the bill, it becomes unnecessary to notice the further pleadings.
The injunction was ordered to be dissolved in the court below, and the plaintiffs appealed to this Court.
The injunction ought to have been dissolved on the ground that it was improvidently issued. By their own showing, the plaintiffs bring themselves within the maxim, "A party must come into equity with clean hands," and their case falls under the principle which is acted on, both at law and in equity, i. e., the courts will not enforce an agreement which is unlawful, immoral, or against public policy, at the instance of one in pari delicto.Melvin v. Easley, 52 N.C. 356. *Page 313 
The bill, among other things, alleges that the note in controversy, and others of a like kind, were executed in order to close the subscription of the Carolina City Company to the railroad company, and thereby enable the railroad company to make the certificate which was necessary to obtain from the public treasurer the last installment of the State subscription, with the understanding that the railroad company would then complete the works at Carolina City, and with the further understanding that no money would be required to be paid on the notes, and time would be given to make sale of the lots, and the sale notes be accepted in satisfaction, and "on being asked to reduce this arrangement to writing, the president of the railroad company refused, saying "that he preferred not to do so, because he could not then so clearly certify to the Governor, but at the same time pledged his word and said (398) he was authorized to pledge the directors to this arrangement," and upon the faith of this pledge, publicly and solemnly made, the notes were executed.
The charter of the railroad contains this clause: "Provided, the treasurer and president of said company shall, before they receive the aforesaid installments, satisfactorily assure the Board of Internal Improvements, by certificate under the seal of the said company, that an amount of the private subscription has been paid in equal proportion to the payment required of the State."
So the very purpose of the agreement which the bill seeks to enforce was to enable the railroad company to obtain money from the State without a compliance with the provisions of the charter.
But, in the second place, the bill is not so framed as to entitle the plaintiffs to their supposed equity against the defendant. It is alleged that the city company made the subscription to the railroad company upon an agreement that certain works should be constructed at the city, and that the works stipulated for have not been completed. Admit that this agreement could be established, and would not fall under R. R. v. Leach, 49 N.C. 340, the equity arising from it would be that of the Carolina City Company, and clearly the plaintiffs are not at liberty to set up an equity on the part of the city company without making it a party to the bill, even supposing that this equity was not waived by paying off its subscription with the individual notes of the stockholders, and thereby entitling itself to so much stock in the railroad company as was paid for.
As a further ground of equity, the bill alleges that the defendant agreed not to enforce the payment of the note in money, but to wait until the city company could sell lots, and then to accept from it "sale notes" in payment of the notes in question, which the city company passed to the railroad company in discharge of its stock, and that sale *Page 314 
(399) notes had been accordingly tendered to the defendant before the institution of the suit at law. To this ground there are three fatal objections.
The city company was a party to this arrangement, and, of course, ought to be a party to a suit which seeks to enforce it.
The bill does not aver that the plaintiffs still have the sale notes ready to hand over to the defendant in discharge of the judgment at law, and it may be the sale notes have been appropriated to other purposes; if so, they ought clearly to pay the judgment.
The bill sets up no primary equity, in aid of which the injunction is asked for, but is framed upon the idea that the injunction is to be made perpetual, and then the matter is to stop, leaving the stock which the city company holds in the railroad company unpaid, and the controversy in regard to it unsettled. An injunction is only granted as ancillary to some primary equity, except to stay waste and prevent irreparable injury. This subject has been so often explained in our decisions within the last few years that it is unnecessary to enter into it again. There is no error.
PER CURIAM. Affirmed.
Cited: Martin v. Cook, 59 N.C. 200; Whitaker v. Bond, 62 N.C. 227;King v. Winants, 71 N.C. 472; McNeill v. R. R., 135 N.C. 734.