JOHN H. BOUSHALL, RECEIVER, v. W. B. STRONACH.

(Filed 18 October, 1916.)

**1. Corporations—Subscriptions — Consideration — Written Contracts — Parol Evidence.**

A subscription to shares of stock in a proposed corporation is upon a sufficient consideration; and when the corporation has accordingly been formed and becomes insolvent, the subscriber, at the suit of the receiver, may not vary its written terms by parol evidence tending to show that, at the time, it was agreed that he would not be required to pay it.

**2. Corporations—Subscriptions—Secret Limitations—Good Faith.**

One may not avoid liability on his subscription to stock in a proposed corporation on the ground of a secret agreement that his subscription was given only for the purpose of inducing others to subscribe, and that he should not incur any liability thereunder, for this would be in violation of the law requiring good faith and fair dealing among subscribers, and a secret limitation of liability for the benefit of one to the disadvantage of the others of them and to the corporation's creditors.

CIVIL ACTION tried by *Cooke, J.,* at May Term, 1916, of WAKE.

This is an action by the receiver of an insolvent corporation to recover upon a subscription to the stock of the corporation.

The defendant admits the subscription to the stock and alleges the following as a defense: "But the defendant alleges that in signing his name to said paper he was not aware that he was binding himself to pay any shares of stock in said corporation.or making himself liable therefor, and that he, the said defendant, did not knowingly or intentionally contract or agree to take three shares or any other number of shares of stock in said corporation; that he, the defendant, was induced, persuaded, and misled to sign said paper by false statements and representations made by the said C. R. Towles, promoter of said corporation, that he, the said Towles, was engaged in promoting or organizing a corporation to manufacture and sell shirts in the city of Raleigh, and that he was getting up a list of good, responsible people of Raleigh to sign their names to assist him in getting other people to take stock, and that it was not intended, nor his purpose, that the defendant should pay any money or take any stock or assume any financial obligation by reason of his signing said paper, and that the defendant was not required to take any stock or pay for any stock, and that the signing of said paper did not bind him to do so; that the defendant was induced by said representations to sign his name to the paper which was presented to defendant, without reading or examining the same, and merely as an accommodation, as defendant was not interested in a proposition

18—172

to manufacture shirts, knew nothing of the financial possibilities of the scheme, and had no money to invest in such ventures, defendant being engaged in the railway business as a train conductor and being thereby kept away from home and deprived of the time and opportunity to keep in touch with such enterprises; that the said representations and statements made by the said C. R. Towles were false and were made with a knowledge of their falsity, and were calculated and intended by the maker thereof to deceive the defendant, and that the defendant relied upon said statements and representations and was deceived thereby, and was induced thereby to sign his name to the said paper without reading the same; that the defendant did not discover said fraud, so practiced upon him, until after the financial failure of the said corporation and the appointment of a receiver thereof by the court; that no demand or notice to pay for any stock in the said corporation had ever been made upon defendant, and defendant had received no notice or information that he was considered a subscriber for said stock or liable therefor until the failure aforesaid and the appointment of said receiver, whereupon defendant promptly refused to pay any money on account of his alleged subscription for stock, and disaffirmed the same; and defendant hereby pleads said fraud in disaffirmation and repudiation of the alleged contract of subscription and in bar of the plaintiff's right to recover thereon."

His Honor held that the matters alleged in the answer were not a defense, and rendered judgment on the pleadings in favor of the plaintiff, and the defendant excepted and appealed.

*W. H. Pace and S. Brown Shepherd for plaintiff.*
*William B. Snow for defendant.*

ALLEN, J. A fair construction of the answer of the defendant is that he subscribed for three shares of stock, not intending to pay for them, and that he was induced to make the subscription by the statement of the promoter that he would not be required to pay; that he wanted his name on the subscription list, as one of the good, responsible people of Raleigh, to assist him in getting other people to take stock; and, as thus understood, the facts alleged do not constitute a defense.

In the first place, the subscription list is a contract in writing, supported by a valuable consideration, and comes within the principle that a written contract cannot be impaired or changed by parol, and the facts alleged are in substance that the defendant subscribed for the stock upon the agreement that he would not be required to pay for it.

The question is considered in *Rousseau v. Call,* 169 N. C., 176, where the Court says: "It is held in this jurisdiction that when persons mutually subscribe a stated sum for a definite and lawful object, the subscription of one may be regarded as a proper consideration for that of the other (*University v. Borden,* 132 N. C., pp. 477-491); and it is very generally recognized that when work has been done or expenditures made or debts incurred on the faith of such a subscription, it then becomes a binding obligation (*Pipkin v. Robinson,* 48 N. C., 152, and 37 Cyc., p. 486); and, when or to the extent that it has been expressed in writing, it comes under the principle obtaining in other written contracts, that it may not be changed or sensibly impaired by parol. *Crane v. Library Assn.,* 29 N. J. L.; *Burnham v. Johnson,* 15 Wis., 286; 37 Cyc., p. 504."

It has also been held that when one assumes a pecuniary obligation by writing, a cotemporaneous agreement that he shall not be required to pay does vary the contract, and is not enforcible. *Bank v. Moore,* 138 N. C., 532; *Basnight v. Jobbing Co.,* 148 N. C., 350.

The Court says in the first of these cases, which was an action upon a note given for stock: "The only defense attempted amounts, in substance, to this: That though the defendant executed his note and received a valuable consideration for same, there was an understanding and agreement at the time that payment should never be enforced or demanded. All the authorities are agreed that such a defense is not open to the defendant." And in the second: "The plaintiff alleges the execution of the contract sued on, which is admitted by the defendants in their answer. The terms of that contract are plain and unambiguous. The defendants explicitly agree therein with the plaintiff that they will become sureties of the jobbing company for the strict performance of the obligation assumed by the company, which is that, upon demand, and one year from the date of the contract, the jobbing company will pay to the plaintiff the sum of $5,000 for his fifty shares of stock. There can be no doubt as to the correct meaning of this language. It is an express and unconditional promise in their individual character, that the money shall be paid at the appointed time. In their answers the defendants deny this allegation and aver that they were not liable personally or individually. This is a square contradiction of the terms of the contract and of the obligation to pay the money themselves, which they assumed by the execution of the instrument."

There is also another objection to the defense alleged, equally conclusive against the defendant, and that is that the law requires good faith and fair dealing between stockholders, and will not enforce a secret agreement, which is for the benefit of one and to the disadvantage of other stockholders and creditors.

Nor will it allow one to give or lend his good name to a promoter "to assist him in getting other people to take stock" and then relieve him from liability upon an agreement that he would not be required to pay.

The authorities are numerous in support of this principle, and we refer only to a few of the more recent.

"It will be no defense to an action to enforce the subscription that the subscription was colorable merely, not intended to be paid, and that there was a secret agreement that it should not be paid, but that it was intended merely to enable the corporation to get sufficient stock subscribed to enable it to become incorporated under the law, to induce others to subscribe for shares, or to give credit to the concern. The rule extends so far as to avoid all secret conditions annexed to the contract of particular subscribers by which their engagement is rendered more onerous to the corporation, more favorable to them, or in any respect different from that named in the written contract and in the governing statute, and to hold the subscriber liable to the obligations of a bona fide shareholder; and this is illustrated by a variety of decisions cited here and elsewhere. The reason is said to be that such contracts are contracts among the subscribers, as well as contracts between the subscriber and the corporation; so that to allow them to operate to release the subscription of the particular subscriber would operate as a fraud on the others." 10 Cyc., 433-4.

"Conditional subscriptions to stock of corporations have been declared to be contrary to sound public policy, by reason of their tendency to mislead and ensnare creditors, and not, therefore, to be encouraged. . . . A subscription to the stock of a company with the understanding of the president that the stock is not to be paid for or held, but is to be canceled, is fraud upon all subsequent subscribers, and holds the party thus subscribing to the responsibilities of a bona fide subscriber. . . . When a subscription contract is reduced to writing and signed, all oral agreements, whether prior or contemporaneous, are merged in it, and parol evidence of them cannot be received to vary the legal import of the writing." 7 R. C. L., 228-9.

"That one man has bound himself to place a certain amount of his money upon the risk involved in the proposed corporate enterprise is an inducement to others to venture their funds in like manner. To hold that a secret stipulation is valid would be, in law, a fraud upon other subscribers as well as upon the public dealing with the company. The party subscribing should be, and is, held bound to all the responsibilities of a bona fide subscriber. Otherwise, there might purport ostensibly to have been taken a large amount of capital stock, whereas, in fact,

there would be really no stock taken at all. The law, therefore, frowns upon all secret stipulations of any sort in subscription agreements, and treats them as a nullity." 9 M. A. L., 92.

We are, therefore, of opinion that there is no error in the judgment of the Superior Court.

Affirmed.