RALEIGH IMPROVEMENT COMPANY v. W. J. ANDREWS ET AL., EXECUTORS OF A. B. ANDREWS, DECEASED.

(Filed 23 October, 1918.)

1. **Contracts, Written — Parol Agreements — Merger — Corporations—Subscriptions to Stock.**

    All prior and contemporaneous verbal agreements to a written subscription to take shares of stock in a proposed corporation merge in the writing.

2. **Same—Contradiction—Statute of Frauds.**

    A written subscription to take shares of stock in a proposed corporation by paying a certain amount in cash and the balance when called for by its

board of directors cannot be varied by evidence of a parol agreement that the subscriber only obligated himself, in the event the full amount required for the enterprise had been raised, as such would contradict or vary the written instrument.

3. **Corporations—Subscriptions to Stock—Abandonment—Equity.**

The mere fact, alone, that a proposed corporate enterprise has been suspended affords a subscriber to the capital stock no excuse for not paying his subscription to its shares upon call of the directors, according to his agreement, and gives the court no equitable jurisdiction to interfere and prevent further calls upon the stockholders, unless it be made to appear that they have equally contributed to the common object and the rights of others are not impaired.

ACTION tried before *Stacy, J.,* at January Term, 1918, of WAKE, upon these issues:

1. Was the subscription of A. B. Andrews, deceased, to plaintiff Improvement Company made with the understanding that it should not be valid unless the amount of $75,000 in subscriptions should be obtained? Answer: "Yes."

2. Was the amount of $75,000 in subscriptions to plaintiff obtained? Answer: "No."

3. Was the said subscription of A. B. Andrews, deceased, made for the purpose of erecting a modern apartment building at the corner of Edenton and Wilmington streets, in the city of Raleigh? Answer: "Yes."

4. Has such purpose been abandoned by the plaintiff? Answer: "Yes."

5. Are the defendants indebted to plaintiff, and if so, in what sum? Answer: "No."

*J. C. Biggs for plaintiff.*
*Manning & Kitchin and A. B. Andrews, Jr., for defendant.*

BROWN, J. The following written contract was entered into by the late Col. A. B. Andrews, the defendant's testator, with plaintiff on 17 February, 1914:

"I hereby subscribe for ten shares of stock of the par value of one hundred dollars each in the Raleigh Improvement Company, a corporation organized under the laws of the State of North Carolina, for the purpose of erecting a modern apartment building at the corner of Edenton and Wilmington streets, in the city of Raleigh. I also agree to make immediate payment of 30 per cent of the amount of my subscription, and the balance as and when called for by the board of directors of said corporation.                    A. B. ANDREWS.  (SEAL)"

The executors having declined to pay the subscription, this action is brought to recover it.

1. The declarations of Colonel Andrews to his son William, to the effect that he had subscribed to the house proposition "provided the balance of the money is raised to complete it," are incompetent. Such declarations to a third party are purely hearsay, not being under oath and not subject to cross-examination. If the testator were living, such declarations would be incompetent and the fact that he is dead does not · alter the rule. Lockhart on Ev., 148, and cases cited. *Shaffer v. Gaynor,* 117 N. C., 24; *Redman v. Redman,* 70 N. C., 257. The evidence is also incompetent because it tends to vary the terms of a written contract. *Walker v. Venters,* 148 N. C., 388. This rule of law is fully discussed and the precedents collected by *Mr. Justice Walker* in *Basnight v. Jobbing Co.,* 148 N. C., 356.

The fact that this is a subscription to stock does not take the case out of the usual rule. It seems to be generally agreed that where a subscription contract is reduced to writing and signed, all oral agreements, whether prior or cotemporaneous, are merged in it and parol evidence of them cannot be received to vary the legal purport of the writing. *Boushall v. Stronach,* 172 N. C., 273; 7 R. C. L., 228-9; *R. R. v. Leach,* 49 N. C., 340; *Boushall v. Myatt,* 167 N. C., 328; 26 A. and E., 911; 10 Cyc., 413-414.

The subscriber to the stock should have caused the condition upon which he subscribed to be inserted in the written instrument.

2. In our opinion, there is no evidence that the purpose of plaintiff to build an apartment house has been abandoned. There is evidence that, owing to present conditions, it has been postponed. That is a matter resting in the discretion of the directors. The mere fact that the work on the corporate undertaking has been suspended is not such evidence of an abandonment of the enterprise as will discharge a subscriber from his obligation of payment, since the refusal of the subscribers to pay according to their contracts may be the very cause of suspension, and the very object of the attempt to enforce their contracts may be to get money to revive or continue the prosecution of the work. 10 Cyc., 406; 28 A. and E., 932.

Thompson Commentaries on Law of Corporations, vol. 1, sec. 1272. Assuming that the corporate authorities have decided that it is best under present conditions to abandon the building of the apartment house, that does not necessarily release the unpaid subscriptions.

A mere abandonment of the corporate enterprise is not necessarily a good defense to an action upon a subscription. 28 A. and E., 932. It may be good ground for an action to dissolve the corporation and to wind up its affairs. Conceding that the corporation has arrived at the

conclusion not to construct the building as designed, it by no means follows that its contracts and engagements are thereby at an end. Debts due by the corporation are not abrogated, and its ability to discharge these may be dependent upon its realizing from the claims owing to it. The unpaid subscriptions to its stock constitute assets of the corporation and are a trust fund to which creditors may resort.

If all the debts of the corporation are discharged, even then the legal consequences claimed by defendant would not necessarily follow. A few stockholders may have paid all their subscriptions, while others may have paid none, and thereby defeated the undertaking. It would be manifestly unjust to hold those subscriptions that have been paid and to turn loose those that remain unpaid.

Inasmuch as stock subscriptions are assets, they must be collected as other assets, and when the debts are all paid and the corporate affairs settled the balance on hand should be divided among stockholders according to their respective rights. *Dorman v. R. R.,* 7 Fla., 281; *R. R. v. Bailey,* 18 Ohio St., 208.

It is true that on being satisfied that stockholders have paid in an amount equal to their engagements, so as to make the burden equal amongst them all, a court of equity will sometimes interfere in case of an abandonment of the undertaking to prevent further calls upon such stockholders, but no such conditions appear to be presented upon this record and no such equitable relief is asked.

We are of opinion that upon all the evidence and in any view of it, the court should have directed a verdict for plaintiff as requested.

New trial.