J. HARRY GURGANUS v. GUARANTY BANK & TRUST COMPANY, ADMINISTRATOR OF THE ESTATE OF MARY GURGANUS, DECEASED.

(Filed 9 October, 1957.)

**1. Appeal and Error § 19—**

Exceptions to the testimony of several witnesses as to declarations made by a particular person are properly grouped under one assignment of error when all the exceptions relate to the single question of law as to whether the testimony was incompetent as hearsay.

**2. Evidence § 41—**

In an action on notes against the estate of the deceased maker, defended on the ground that intestate did not execute the notes, testimony of defendant's witnesses as to declarations made by decedent in plaintiff's absence to the effect that plaintiff was trying to borrow money from her, is incompetent as hearsay, since the testimony is offered to prove as a fact matter recited in the declarations of a person not a witness, and the admission of such testimony over plaintiff's objections is prejudicial for the reason that it tends to show that intestate was not indebted to plaintiff on promissory notes or otherwise.

**3. Evidence § 43a—**

The rule that testimony of a declaration accompanying an act may be competent to explain the legal effect of the act does not permit the introduction of testimony of a declaration to prove as a fact matters recited in the declaration in violation of the hearsay rule, nor does the rule apply when the declaration does not accompany the conduct sought to be explained.

**4. Same—**

Testimony of declarations of the maker of notes, made in the absence of the payee and subsequent to the execution of the notes, to the effect that she was not indebted to the payee, cannot be competent under the verbal act doctrine.

**5. Evidence § 27—**

The relevancy of evidence, as distinguished from its competency, is determined in relation to the issues on which the case is tried.

APPEAL by plaintiff from *Frizzelle, J.,* April Term, 1957, of PITT.

Civil action instituted 7 December, 1955, against the administrator *d.b.n.* of the estate of Mary Gurganus, plaintiff's sister, who died in April, 1953, in which plaintiff seeks to recover a balance of $19,036.18, plus interest, on two promissory notes dated 5 August, 1946, bearing interest from date at 6% per annum, one for $13,286.18 and the other for $5,750.00.

Plaintiff alleged that defendant's intestate, for value, had executed and delivered to plaintiff the said two promissory notes, under seal, and that she had made payments on each note.

Answering, defendant categorically denied plaintiff's said allegations, and each and every part thereof. By way of further answer and defense, defendant alleged that the estate of its intestate was not indebted to plaintiff; and, as bars to plaintiff's action, defendant pleaded designated statutes of limitation and laches.

Two issues were submitted to the jury. The first issue and the jury's answer thereto were as follows: "Did Mary Gurganus execute and deliver the notes sued on? Answer: No." The second issue, which

concerned the amount, if any, plaintiff was entitled to recover on said notes, was not reached.

Judgment was entered for defendant in accordance with the verdict. Plaintiff excepted and appealed, assigning errors.

*John F. Crossley, Isaac C. Wright, and Sam B. Underwood, Jr., for plaintiff, appellant.*

*James & Speight for defendant, appellee.*

BOBBITT, J.  The two papers sued on, purporting to be promissory notes as alleged, were offered by plaintiff and admitted in evidence. On each the name "Mary Gurganus" appears as maker, after her name the word " (Seal) " appears and under the caption "Witness" the name "J. I. Gray" appears.  On the back of each purported credit entries appear.

It was admitted by plaintiff's counsel "that the body of the notes, other than the signatures, as well as the alleged credits written on the back of the notes, are all in the handwriting of the plaintiff."

The first issue was directed solely to the alleged execution and delivery of the notes by Mary Gurganus.  The precise question to which conflicting evidence was directed was whether the name "Mary Gurganus" appearing as maker on each note was in fact written thereon by Mary Gurganus.

On this appeal, there is no need to discuss the evidence in detail. Suffice to say, plaintiff's evidence tended to show that the name "Mary Gurganus" on each note was in fact her genuine signature; and defendant's evidence tended to show that her name on each note was not her genuine signature but was a tracing made from her signature to an agreement dated 20 April, 1925, between her and plaintiff.

Plaintiff's assignment of error, directed to the admission, over his objection, of the following testimony of witnesses offered by defendant, is well taken.

S. Lloyd Tucker, who married Mary Gurganus' niece, testified that Mary Gurganus visited his home quite frequently and discussed her affairs with him.  He was permitted to testify that Mary Gurganus *told him* "that her brother Jim (plaintiff Harry Gurganus) would come down and try to borrow money and that he nearly worried her to death"; and further, that in 1946 Mary Gurganus *stated* to him that the plaintiff had tried to borrow money from her over a period of years.

Carol Whichard, who tended Mary Gurganus' farm from 1950 until her death, testified that on a certain occasion plaintiff came to the house looking for Mary Gurganus and left upon learning that she was not at home.  He was permitted to  testify that Mary Gurganus, when

told of plaintiff's visit, *said* that "she was glad she didn't see him because all he ever came for (was) to borrow money from her."

B. F. Fleming, who was engaged in building a house for Mary Gurganus in 1934, testified that while this work was in progress plaintiff came to the job and talked with Mary Gurganus. Fleming did not testify as to what was said by either plaintiff or Mary Gurganus in *their* conversation. His testimony as to what occurred after plaintiff left was as follows: "I happened to be working alone that afternoon and Miss Mary came out to where I was working and *said* to me, 'Well, I finally got rid of him'; that's the way she expressed herself. She *said*, 'I guess you know what he came for,' and I said, no, and she *said*, 'Well, he never comes but what he wants to borrow money,' and she *said* they told him she had the money and he wanted to borrow $500. She *said* she had the money but she was saving it to rebuild the house." (Italics added.)

Plaintiff's exceptions to the admission of the foregoing testimony were properly grouped under one assignment of error. All relate to a single question of law, namely, whether testimony as to such declarations of Mary Gurganus was competent. *Dobias v. White,* 240 N.C. 680, 688, 83 S.E. 2d 785.

If plaintiff made persistent efforts to *borrow* money from Mary Gurganus as indicated by the quoted testimony, it may be clearly inferred from this that she was not *indebted* to plaintiff on promissory notes or otherwise. Unquestionably this evidence was calculated to weigh heavily against plaintiff in the minds of the jurors.

Since the probative value of the quoted testimony depends wholly upon the truth of the matters asserted by Mary Gurganus in the declarations attributed to her, it is clear that it was incompetent as hearsay and should have been excluded. *Pettiford v. Mayo,* 117 N.C. 27, 23 S.E. 252; *Improvement Co. v. Andrews,* 176 N.C. 280, 96 S.E. 1032; *Lister v. Lister,* 222 N.C. 555, 24 S.E. 2d 342. Its admission, over plaintiff's objection, was prejudicial and entitles plaintiff to a new trial.

These facts are noted: (1) The declarations attributed to Mary Gurganus were not made in plaintiff's presence. *Chandler v. Jones,* 173 N.C. 427, 92 S.E. 145. (2) Plaintiff did not testify; nor did he offer evidence as to statements made by Mary Gurganus. (3) The testimony as to plaintiff's visits was brought out by defendant from its witnesses. Moreover, nothing in the cross-examination of defendant's said witnesses related to the declarations attributed to Mary Gurganus.

"Whenever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay." Stansbury, North Carolina Evidence, sec. 138, and cases cited.

"Evidence, oral or written, is called hearsay when its probative force depends in whole or in part upon the competency and credibility of some person other than the witness by whom it is sought to produce it." 11 A. & E. (2 Ed.) 520. This definition, repeated often in our decisions, appears to have been quoted first in *King v. Bynum,* 137 N.C. 491, 495, 49 S.E. 955. *Judge Brown's* comment in that case seems appropriate here, viz.: "The most ingenious mind can hardly bring the testimony pointed out within any recognized exception to the general rule excluding hearsay evidence."

It is noted that *Bank v. Stack,* 179 N.C. 514, 103 S.E. 6, cited by appellee, related to the relevancy, not to the competency, of the evidence then considered.

Appellee cites cases based on G.S. 8-51, *e.g., Batten v. Aycock,* 224 N.C. 225, 29 S.E. 2d 739, which hold, in substance, that when the representative of a deceased person testifies in his own behalf or offers the testimony of the deceased person in evidence as to a transaction or conversation between the deceased person and an adverse party, he thereby "opens the door" so as to make competent the testimony of his adversary concerning the same transaction or conversation. Appellee argues that plaintiff *could* have taken advantage of this rule by testifying to what, if anything, occurred between him and Mary Gurganus on the occasions of the visits referred to by defendant's said witnesses. It is futile to speculate as to what extent, if any, testimony by plaintiff would have been competent had he elected to stand by and permit the admission without objection of said testimony as to declarations of Mary Gurganus. Plaintiff did not elect to take this course. On the contrary, by objections aptly made, he challenged the competency of this testimony when proffered by defendant. Suffice to say, G.S. 8-51 gave defendant no right to "open the door," over plaintiff's objection, by incompetent evidence.

On oral argument, and by supplemental memorandum, appellee advanced the contention that Mary Gurganus' declarations were competent as "utterances forming a verbal part of an act." Wigmore on Evidence, 3rd Ed., Vol. VI, sec. 1772, cited by appellee, sets forth in detail the limitations of the verbal act doctrine. The distinguished author is careful to point out that the doctrine refers to an utterance or declaration which "accompanies conduct to which it is desired to attach some legal effect."

Illustrations of the type of factual situation to which the doctrine applies will be found in *Moore v. Gwyn,* 26 N.C. 275, and *Collier v. Poe,* 16 N.C. 55, cited by appellee. In each the issue was whether plaintiff, the owner of certain slaves, delivered possession thereof as a loan or as a gift. His delivery of the slaves was the act or conduct to which it was desired to attach legal effect. Plaintiff's declarations at the time

of such delivery (Collier) or shortly before such delivery (Moore), were held competent to show that the slaves were delivered as a loan rather than as a gift.

Here the only transaction to which it is desired to attach legal effect is the alleged execution and delivery by Mary Gurganus of the notes sued on. There is no contention that her declarations throw any light upon the nature or legal effect of this alleged act; for defendant's basic position is that Mary Gurganus did not sign the notes. Too, the probative force of evidence admissible under the verbal act doctrine depends wholly upon the fact that the declarations *were made,* without regard to the truth or falsity of the matters asserted therein.

As stated by Wigmore: "Thus the words are used in no sense testimonially, *i.e.* as assertions to evidence the truth of a fact asserted in them. On the one hand, therefore, the Hearsay rule interposes no objection to the use of such utterances, because they are not offered as assertions (*ante,* sec. 1766). On the other hand, so far as they may contain assertions, these are not to be used or argued about testimonially, nor believed by the jury; for this would be to use them in violation of the Hearsay rule. In short, the utterances enter *irrespective of the truth of any assertion they may contain;* and they neither profit nor suffer by virtue thereof."

On this appeal, it is unnecessary to consider all limitations of the verbal act doctrine. Suffice to say, the doctrine has no application here because (1) the declarations did not accompany conduct to which it was desired to give legal effect, and (2) the probative value of the quoted testimony, as stated above, depends wholly upon the truth of the matters asserted by Mary Gurganus in the declarations attributed to her.

Since a new trial is awarded on the ground stated, we do not consider plaintiff's other assignments of error. They are directed largely to the admission of evidence challenged by plaintiff as irrelevant. The questions raised, as now presented, may not arise when the case is tried again. The relevancy of evidence, as distinguished from its competency, is determined in relation to the issues on which a case is tried. *DeBruhl v. Highway Com.,* 245 N.C. 139, 95 S.E. 2d 553, and cases cited.

New trial.