LAURA TARRANT, Plaintiff v. FREEWAY FOODS OF GREENSBORO, INC., d/b/a WAF-
FLE HOUSE, FREEWAY FOODS, INC., d/b/a WAFFLE HOUSE, JESSE YUN,
DOUG KINGTON, SR., and JOHN DOE, Defendants

No. COA03-210

(Filed 6 April 2004)

**1. Appeal and Error— appealability—dismissal of two claims—voluntary dismissal of remaining claims**

An appeal was not interlocutory where only two of four claims were dismissed by the trial court, but the other two were later voluntarily dismissed by plaintiff as part of a settlement. There is nothing left for the trial court to adjudicate; any delay would impede rather than expedite resolution of the matter.

**2. Employer and Employee— wrongful termination—workers' compensation claim**

The trial court erred by dismissing plaintiff's claim for wrongful termination in violation of public policy for asserting her workers' compensation rights where plaintiff was injured, collected temporary disability, returned to work, and was then terminated because she had "cost the company a lot of money."

**3. Employer and Employee— retaliatory discharge—temporal requirement**

The trial court erred by dismissing plaintiff's claim under REDA (the Retaliatory Employment Discrimination Act) where the employer admitted that plaintiff's firing was in retaliation for a workers' compensation claim and the question was the length of time between the filing of the claim and the retaliation. The major concern is whether plaintiff was fired for asserting her workers' compensation claim; strictly requiring a close temporal relationship between the claim and the retaliation would allow employers to circumvent the statute.

**4. Arbitration and Mediation— employment contract—existence of arbitration agreement**

Claims arising from an employment termination were remanded for determination of whether there was a valid arbitration agreement between the parties.

Appeal by plaintiff and defendant Freeway Foods, Inc., from order entered 8 October 2002 by Judge John R. Jolly, Jr., in

TARRANT v. FREEWAY FOODS OF GREENSBORO, INC.

[163 N.C. App. 504 (2004)]

Wake County Superior Court. Heard in the Court of Appeals 13 January 2004.

*Faith Herndon for plaintiff appellant-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by John W. Ormand III and Charles E. Coble, for defendant appellant-appellee.*

*Glenn, Mills & Fisher, P.A., by Stewart W. Fisher; and Ferguson, Stein, Chambers Wallas, Adkins, Gresham & Sumter, P.A., by Margaret Errington for North Carolina Academy of Trial Lawyers Amicus Curiae.*

McCULLOUGH, Judge.

This case arises out of plaintiff's termination from employment. Plaintiff asserted one claim under the Retaliatory Employment Discrimination Act (REDA) and one claim for wrongful discharge in violation of public policy. Plaintiff also sued for slander and conversion. In response, defendant filed a motion to compel plaintiff to arbitrate her claims.

Plaintiff Laura Tarrant was employed by defendant Freeway Foods of Greensboro, Inc., in 1989. In 1993, plaintiff sustained a work-related back injury and was compensated under North Carolina's Workers' Compensation Act. For the first several years after the injury, plaintiff continued to work.

In 1996, plaintiff's compensable back injury worsened, and she required surgery. Around June of 1996, she was put on a leave of absence because of her back surgery and condition. At this time, defendant paid temporary total disability benefits during plaintiff's period of disability. In early 1997, plaintiff's physician assigned restrictions, including limiting plaintiff to lifting items no greater than thirty pounds. Also, in 1997 and 1998, plaintiff's doctors indicated that she was still disabled from working part time and recommended further surgical procedures.

During 1997 and most of 1998, defendant and its insurance carriers paid plaintiff total disability benefits. Plaintiff was unable to work for defendant or any other employer. On or about 23 October 1998, the parties settled plaintiff's workers' compensation claim. The agreement did not prevent plaintiff from working for defendant in the future.

TARRANT v. FREEWAY FOODS OF GREENSBORO, INC.

[163 N.C. App. 504 (2004)]

In 1999, plaintiff worked for other employers. Later that year, she applied to work for defendant and was rehired by Larry Davis, a Unit Manager. At that time, plaintiff was physically able to do the job. Plaintiff claims that when she was leaving the store after being hired, the District Manager for defendant, Ken Tindall, inquired about plaintiff's back condition and expressed concerns about whether plaintiff could do the job. According to plaintiff, Tindall asked her if she was going to behave and stated, "You're not going to fall again, are you?"

Plaintiff reported to work on 2 November 1999. On 4 November 1999, Larry Davis told plaintiff that her employment with defendant had been terminated. Plaintiff alleges that Davis told her that her job performance was fine, but she "cost the company a lot of money."

Plaintiff contacted Ken Tindall and other managers and told them that she was not too disabled to do the job. However, the managers disagreed. They told plaintiff that she agreed that she could not work for defendant again when she settled her workers' compensation claim. Plaintiff filed claims for (1) violation of North Carolina's Retaliatory Employment Discrimination Act (REDA), (2) wrongful discharge in violation of public policy, (3) slander, and (4) wrongful conversion.

In response, defendant filed a motion to dismiss or in the alternative, to stay action and compel plaintiff to submit her claims to binding arbitration. In support of its motion to compel arbitration, defendant presented evidence tending to show that when she was rehired in 1999, plaintiff completed and signed the standard "Waffle House" employment application. The documents in the application include an Application for Hourly Employment, a form which contains an arbitration clause. In the arbitration clause, employees agree to resolve all disputes arising out of employment through binding arbitration. Although plaintiff acknowledged signing some application documents, defendant was unable to locate the actual Application for Hourly Employment that plaintiff signed.

The trial court dismissed plaintiff's REDA claim and claim for wrongful discharge in violation of public policy, but did not dismiss the slander and conversion claims. The court denied defendant's motion to stay action and compel arbitration.

Both sides appeal. On appeal, plaintiff argues that the trial court erred by: (1) dismissing the REDA claim and (2) dismissing

the claim for wrongful termination in violation of public policy. In contrast, defendant asserts that the trial court erred by (1) denying defendant's motion to stay action and compel arbitration or, in the alternative, (2) by failing to make and enter sufficient findings of fact. Before addressing these issues, we must evaluate defendant's contention that this appeal should be dismissed as interlocutory.

## I. Interlocutory Appeal

**[1]** Defendant argues that plaintiff's appeal should be dismissed as interlocutory. We disagree.

Under N.C. Gen. Stat. § 1A-1, Rule 54(a) (2003), a judgment is either final or interlocutory. Our Supreme Court has explained this distinction:

> A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court. An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.

*Veazey v. Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Under N.C. Gen. Stat. § 7A-27 (2003), final judgments are immediately appealable. However, interlocutory orders are only appealable in a limited set of circumstances. The purpose of the restrictions on the right to appeal immediately from an interlocutory ruling "is to prevent fragmentary, premature and unnecessary appeals by permitting the trial divisions to have done with a case fully and finally before it is presented to the appellate division." *Waters v. Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978).

We decline to dismiss this case because plaintiff's appeal is not interlocutory. Originally, plaintiff filed four causes of action. The first two claims were for violations of the Retaliatory Employment Discrimination Act (REDA) and for wrongful discharge in violation of public policy. The remaining two claims were for slander and wrongful conversion.

On 4 October 2002, the trial court dismissed plaintiff's REDA claim and plaintiff's claim for wrongful discharge in violation of public policy, but refused to dismiss the other two claims for slander and wrongful conversion. At that point, plaintiff's appeal would have been

interlocutory because the entire case was not disposed of. However, on 7 February 2003, plaintiff voluntarily dismissed the claims for slander and wrongful conversion as part of a settlement agreement with defendant.

At this juncture, we believe that the interests of justice would be furthered by hearing the appeal. All claims and judgments are final with respect to all the parties, and there is nothing left for the trial court to determine. Therefore, the rationale behind dismissing interlocutory appeals, the prevention of fragmentary and unnecessary appeals, does not apply in this case. In fact, any delay on our part would impede, rather than expedite, the efficient resolution of this matter. For these reasons, we decline to dismiss the appeal and will consider the case on the merits.

II. Wrongful Termination in Violation of Public Policy

[2] Plaintiff argues that the trial court erred in dismissing plaintiff's claim for wrongful discharge in violation of public policy. We agree.

Under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2003), a party may file a motion to dismiss for failure to state a claim upon which relief can be granted. In considering the motion, the court evaluates "whether the facts alleged in the complaint, when viewed in the light most favorable to the plaintiff[], give[s] rise to a claim for relief on any theory." *Ford v. Peaches Entertainment Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986), *disc. review denied*, 318 N.C. 694, 351 S.E.2d 746 (1987).

North Carolina adheres to the at-will employment doctrine which states that "in the absence of a contractual agreement . . . establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997), *reh'g denied*, 347 N.C. 586, 502 S.E.2d 594 (1998). However, there is a public policy exception to the rule. *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 259, 580 S.E.2d 757, 761 (2003). While there is not a specific list of what actions constitute a violation of public policy, the exception has applied where the employee is fired " '(1) for refusing to violate the law at the employer[']s request, (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy.' " *Id.* (citation omitted).

This Court has considered whether "a claim of wrongful discharge based upon North Carolina public policy of not punishing employees for exercising their statutory rights under the Workers' Compensation Act was tenable[.]" *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 697, 575 S.E.2d 46, 54 (2003). In *Salter*, we concluded that such a cause of action probably does exist, but plaintiff's claim could not succeed because there was insufficient evidence. *Id.* The next time this Court considered the issue we stated unequivocally, "we agree with the reasoning of *Salter* on this issue." *Brackett*, 158 N.C. App. at 259, 580 S.E.2d at 762. "[A] plaintiff may state a claim for wrongful discharge in violation of public policy where he or she alleges the dismissal resulted from an assertion of rights under the Workers' Compensation Act." *Id.* at 260, 580 S.E.2d at 762.

In this case, plaintiff has alleged sufficient facts to survive a motion to dismiss on the claim of wrongful discharge in violation of public policy. Plaintiff claims that she was fired because she asserted her rights under the Workers' Compensation Act. Evidence in the record reveals that plaintiff sustained a back injury in 1993 while working for defendant. The injury was compensable under North Carolina's Workers' Compensation Act. For the first few years after the injury, plaintiff was able to continue working. However, in 1996, the injury worsened, and plaintiff required surgery. At that time, defendant paid temporary total disability benefits. During 1997 and most of 1998, plaintiff received total disability benefits because she could not work for defendant or any other employer. On 1 November 1999, defendant rehired plaintiff.

Plaintiff's allegations of the events regarding her hiring and firing tend to show that she was fired because she filed a workers' compensation claim. When plaintiff was leaving the store after being rehired, plaintiff claims that the District Manager, Ken Tindall, asked her, "Are you going to behave? You're not going to fall again, are you?" Plaintiff also produced evidence showing what happened on the day she was terminated. A manager told plaintiff that her job performance was fine, but the company did not want her around because she cost them a lot of money. We conclude that this is sufficient evidence to allow plaintiff's wrongful discharge claim to go forward. Therefore, we reverse the trial court's dismissal of this claim.

### III. REDA Claim

[3] Plaintiff also argues that the trial court erred by dismissing her claim under the Retaliatory Employment Discrimination Act (REDA).

Enacted in 1992, REDA prohibits discrimination against an employee who has filed a workers' compensation claim. N.C. Gen. Stat. § 95-240, *et. seq.* (2003). N.C. Gen. Stat. § 95-241(a)(1)(a), prevents discrimination or retaliation against an employee who does or threatens to

> [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . . Chapter 97 of the General Statutes.

REDA replaced N.C. Gen. Stat. § 97-6.1 which sought to allow employees to "pursue remedies under the Workers' Compensation Act without fear of retaliation from their employers." *Salter,* 155 N.C. App. at 691, 575 S.E.2d at 50. The issue in the present case is whether a plaintiff must show a close temporal connection between the filing of the claim and the alleged retaliatory act when the employer or the employer's agent has admitted that plaintiff was fired because she asserted her rights under the Workers' Compensation Act.

"[O]ur appellate courts indicated *in applying the former provision* that a plaintiff fails to make out a case of retaliatory action where there is no close temporal connection between the filing of the claim and the alleged retaliatory act." *Id.* (emphasis added). However, we note that at least two of the cases that have dismissed these claims have considered the lack of a close temporal connection as one of many factors.

For example, in a case that applied the former statute (N.C. Gen. Stat. § 97-6.1), this Court affirmed a jury verdict that denied relief to plaintiff where the evidence showed that defendant did not question the fact that plaintiff was disabled, but terminated plaintiff for misrepresenting the extent of the disability. *Shaffner v. Westinghouse Electric Corp.,* 101 N.C. App. 213, 398 S.E.2d 657 (1990), *disc. review denied,* 328 N.C. 333, 402 S.E.2d 839 (1991). Although we stated that there was no close temporal connection between the initiation of the workers' compensation claim and the termination, the key factor was causation. *Id.* at 216, 398 S.E.2d at 659. Plaintiff was not fired because he instituted a workers' compensation claim; he was terminated because he lied about the gravity of his injuries. *Id.*

In *Salter,* "[s]everal things . . . [were] wrong with plaintiff's claim." *Salter,* 155 N.C. App. at 691, 575 S.E.2d at 50. We acknowledged that

there was no close temporal connection between the filing of the workers' compensation claim and plaintiff's termination. *Id.* However, we also indicated that plaintiff offered "little more than mere speculation" that defendant fired her "because she filed a workers' compensation claim." *Id.* at 692, 575 S.E.2d at 50. Thus, our major concern was whether plaintiff was terminated because she filed a workers' compensation claim, rather than timing alone. Perhaps, if plaintiff offered more evidence, there would have been a triable issue.

We are not aware of any REDA case in which the employer admitted that the employee was terminated for pursuing her workers' compensation rights. However, that is precisely what happened here. When plaintiff was rehired by defendant, a district manager allegedly asked plaintiff if she was going to behave and stated, "You're not going to fall again, are you?" Similarly, when she was fired, plaintiff was told that her job performance was fine, but she was being terminated because "she cost the company a lot of money." These statements strongly suggest that plaintiff was terminated because she instituted and later settled a workers' compensation claim. We recognize that a long interval between the filing of a workers' compensation claim and the termination of the employee could reveal that the two events were not causally related. However, such a concern does not arise where the employer openly admits that the firing was retaliatory.

We believe that strictly requiring a close temporal connection would allow employers to circumvent the statute. By simply delaying the retaliatory firing for several months, an employer could prevent a REDA claim from ever going forward, even where there is direct evidence of a wrongful motive.

At the very least, this case presents a triable issue. Ultimately, if this matter is not settled or resolved through binding arbitration, the jury should determine whether plaintiff was wrongfully terminated because she pursued her rights under the Workers' Compensation Act. For these reasons, we reverse the trial court's decision to dismiss plaintiff's REDA claim.

### IV. Arbitration Agreement

[4] The final issue we must consider is whether the parties agreed to settle their disputes through binding arbitration. When a party denies the existence of an arbitration agreement, a court must "summarily

determine whether a valid arbitration agreement exists." *Barnhouse v. American Express Fin. Advisors, Inc.*, 151 N.C. App. 507, 508, 566 S.E.2d 130, 131 (2002). "Failure of the court to determine this issue, where properly raised by the parties, constitutes reversible error." *Id.*

After a careful review of the record, we are unable to clearly determine if the trial court found that there was a valid arbitration agreement. Therefore, we respectfully remand this issue for the purpose of clarification. If there was a valid arbitration agreement, plaintiff's claims will be settled through binding arbitration. If there was not a valid agreement, plaintiff should be allowed to pursue her claims in court.

For these reasons, the decision of the trial court is

Reversed and remanded.

Judges WYNN and TIMMONS-GOODSON concur.