McDOWELL v. CENT. STATION ORIGINAL INTERIORS, INC.

[211 N.C. App. 159 (2011)]

JAMES L. McDOWELL, Plaintiff v. CENTRAL STATION ORIGINAL INTERIORS, INC., Defendant

No. COA10-324

(Filed 19 April 2011)

**1. Employer and Employee— Retaliatory Employment Discrimination Act— reason for termination—summary judgment improper**

The trial court erred by granting defendant employer's motion for summary judgment in a case alleging termination in violation of the Retaliatory Employment Discrimination Act. There was a genuine issue of material fact as to why plaintiff was terminated after he exercised his right to file a workers' compensation claim.

Appeal by plaintiff from order entered 11 December 2009 by Judge Edgar B. Gregory in Superior Court, Guilford County. Heard in the Court of Appeals 11 October 2010.

*Morgan, Herring, Morgan, Green, & Rosenblutt, L.L.P. by Todd J. Combs, for plaintiff-appellant.*

*Clayton B. Krohn, for defendant-appellee.*

STROUD, Judge.

Plaintiff filed a complaint alleging defendant terminated him in violation of the Retaliatory Employment Discrimination Act. The trial court granted defendant's motion for summary judgment, and plaintiff appeals. As we conclude that plaintiff has forecast a genuine issue as to a material fact, we reverse.

I. Background

On 27 February 2009, plaintiff sued defendant alleging in pertinent part:

8. On or about November 5, 2007 Plaintiff was injured at work in a job related hernia injury and received medical care resulting in Plaintiff being out of work as a result of the job related injury through March 1, 2008.

9. After Plaintiff's hernia injury on November 5, 2007, Plaintiff filed a workers' compensation claim due to his health injuries and said claim was reported to the Defendant.

10. On or about March 3, 2008 Plaintiff returned to his employment. After March 3, 2008, the Plaintiff returned to work with unrestricted duty.

11. For the approximate fifteen (15) month period the Plaintiff was employed by Defendant, he only missed work during the above stated period of time due to his hernia injury, when the Plaintiff was in that hospital for three (3) day[s] during the summer of 2007 due to a blood disorder and Plaintiff was tardy on only one (1) occasion.

12. When Plaintiff returned to work, Lisa Hyatt, Chief Financial Officer of Defendant, informed Plaintiff that his job had been "cut", that Plaintiff had been assigned to "clean up duty", that Plaintiff had been put on probation for ninety (90) days due to Plaintiff's "sorry" work record, and that Plaintiff had done nothing except "cost the company money" since Plaintiff had been there and that Plaintiff was a "risk to the company".

13. On or about March 18, 2008 at 5:30 P.M. Plaintiff fell on his back porch steps when he saw a snake and injured his back.

14. On or about March 19, 2008 at 6:30 A.M. Plaintiff contacted his supervisor, Defendant employee Derek Latham that Plaintiff hurt his back and that he had to go see a doctor. Plaintiff's doctor instructed Plaintiff to have bed rest for the rest of the week and Plaintiff relayed this information to his supervisor Derek Latham.

15. Plaintiff was instructed by Derek Latham that he had to talk to Lisa Hyatt who requested that Plaintiff provide her with a doctor's note. Plaintiff presented Lisa Hyatt with a doctor[']s note on the morning of March 19, 2008 and Plaintiff was terminated by Defendant on March 19, 2008. Lisa Hyatt told Plaintiff he was on ninety (90) day probation since [he] had had [sic] returned to work on March 3, 2008 and that now Plaintiff was "out the door" and "fired."

16. The Defendant's assertions said [sic] that it was proper to terminate the Plaintiff due to absenteeism, failure to follow safety procedures, and insubordination is a ploy used by the Defendant to terminate the Plaintiff's employment because of Defendant's retaliatory discharge for Plaintiff filing a workers' compensation claim.

[211 N.C. App. 159 (2011)]

Plaintiff alleged defendant terminated him contrary to the Retaliatory Employment Discrimination Act ("REDA"). Plaintiff requested, *inter alia*, "his back pay losses, prejudgment interest on back pay losses, front pay losses, job benefits, wage increases and diminished retirement benefits, emotional distress damages, punitive damages, and compensatory damages[,]" and "[t]hat the Defendant be ordered to implement procedures and policies to prevent illegal discriminatory activities and that the Defendant is enjoined from committing further violations of the Retaliatory Employment Discrimination Act[.]"

On or about 20 November 2009, defendant filed an amended motion for summary judgment because "there [was] no genuine issue as to any material fact and that Central Station is entitled to judgment as a matter of law." On 11 December 2009, the trial court granted summary judgment in favor of defendant and dismissed all of plaintiff's claims with prejudice. Plaintiff appeals.

## II. Summary Judgment

Plaintiff argues that "the trial court committed reversible error by dismissing this action and granting Defendant's Motion for Summary Judgment." (Original in all caps.) "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). "The evidence must be viewed in the light most favorable to the non-moving party." *Wiley v. United Parcel Service, Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004).

N.C. Gen. Stat. § 95-241(a) provides in pertinent part that

[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to . . .

[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . .

Chapter 97 of the General Statutes.

N.C. Gen. Stat. § 95-241(a) (2007).

The statute [which REDA replaced] does not prohibit all discharges of employees who are involved in a workers' compensa-

tion claim, it only prohibits those discharges made because the employee exercises his compensation rights. Furthermore, our appellate courts indicated in applying the former provision that a plaintiff fails to make out a case of retaliatory action where there is no close temporal connection between the filing of the claim and the alleged retaliatory act.

*Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 691, 575 S.E.2d 46, 50 (2003) (citation and quotation marks omitted).

The North Carolina Retaliatory Employment Discrimination Act (REDA) prohibits discrimination or retaliation against an employee for filing a worker's compensation claim. In order to state a claim under REDA, a plaintiff must show (1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a). An adverse action includes the discharge, suspension, demotion, retaliatory relocation of an employee, or other adverse employment action taken against an employee in the terms, conditions, privileges, and benefits of employment. If plaintiff presents a prima facie case of retaliatory discrimination, then the burden shifts to the defendant to show that he would have taken the same unfavorable action in the absence of the protected activity of the employee. Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation.

*Wiley* at 186-87, 594 S.E.2d at 811 (citations and quotation marks omitted).

Here, there is no dispute that plaintiff "exercised his rights" to file a worker's compensation claim and "that he suffered an adverse employment action" as he was terminated from employment. *Id.* at 186, 594 S.E.2d at 811. Thus, the only issue left in considering whether plaintiff properly brought a REDA claim is whether "the alleged retaliatory action was taken because . . . [plaintiff] exercised his rights" to file a worker's compensation claim. *Id.*

Ms. Lisa Hyatt, defendant's Chief Financial Officer, stated in her affidavit that "plaintiff had excessive absences from work, failed to follow company procedures including, but not limited to, driving a

McDOWELL v. CENT. STATION ORIGINAL INTERIORS, INC.

[211 N.C. App. 159 (2011)]

forklift without certification, preparing the wrong products for shipment to customers, not following instructions of the manager and engaging in insubordinate behavior." Ms. Hyatt stated that plaintiff "was terminated for not reporting to work and for excessive absenteeism."

However, Mr. Mike West, a former employee of defendant who worked as a shipping manager, filed an affidavit stating that plaintiff "was a very good employee and always on time." Mr. West claimed he only knew of one time when plaintiff was tardy and that even then plaintiff informed him beforehand. Mr. West asserted that plaintiff only missed work "due to an illness or injury" and that Lisa told him that they "need to get rid of James before he gets hurt again." In Mr. West's deposition he also stated that he was told "they needed to get rid of [plaintiff] before he cost the company a bunch of money and that [he] needed to start writing him up for whatever [he] could."

Mr. Derek Latham, also a former employee of defendant and plaintiff's former supervisor, testified in his deposition that defendant had never been absent without a doctor's note. Mr. Latham testified that he was present when plaintiff returned from his 5 November 2007 injury ("worker's compensation injury") and that Ms. Hyatt put plaintiff on ninety-days probation for plaintiff "not [to] get hurt[.]" Mr. Latham also testified that he believed plaintiff was fired "because he filed a health insurance claim[.]"

During plaintiff's deposition he stated that when he returned from his worker's compensation injury, Ms. Hyatt told him he hadn't "done nothing but cost the company money. Now [he's] a risk to that company[.]" Thus, defendant has presented evidence that plaintiff was terminated for excessive absences, but plaintiff has presented evidence that he was terminated due to his "health claim[;]" the conflicting evidence creates a question of material fact.

Plaintiff directs our attention to *Tarrant v. Freeway Foods of Greensboro, Inc.*, wherein

a district manager allegedly asked [the] plaintiff if she was going to behave and stated, "You're not going to fall again, are you?" Similarly, when she was fired, [the] plaintiff was told that her job performance was fine, but she was being terminated because "she cost the company a lot of money."

163 N.C. App. 504, 511, 593 S.E.2d 808, 813, *disc. review denied*, 358 N.C. 739, 603 S.E.2d 126 (2004). This Court determined that "[t]hese statements strongly suggest that [the] plaintiff was terminated

because she instituted and later settled a workers' compensation claim[,]" and therefore reversed the trial court's dismissal of the plaintiff's REDA claim. *Id.*

Defendant states that *Tarrant* and this case are similar to the extent that employees alleged their employers told them they were costing the employer money but contends that the similarities end there. Defendant claims the "costs" statement made here is distinguishable from *Tarrant* because the statement was not made at the time defendant was being terminated; the basis for the statement was different as it involved plaintiff's absences and mistakes; defendant "never acknowledged" plaintiff "was a good worker[;]" and plaintiff was put on probation rather than terminated upon returning to work from his worker's compensation injury.

While we agree with defendant that there are factual differences between *Tarrant* and the present case, we do find the similar language used by the employers regarding "costs" compelling when considering this case. Here, the alleged "costs" statement was made when defendant returned to work from his worker's compensation injury, on 3 March 2008, but defendant was not terminated until 19 March 2008; accordingly, defendant was terminated from employment within three weeks of the statement being made. The fact that defendant did not terminate plaintiff until three weeks after making the "costs" statement does not resolve the factual issue as to whether plaintiff was terminated in violation of REDA. *See generally Tarrant* at 511, 593 S.E.2d at 813 ("[A] long interval between the filing of a workers' compensation claim and the termination of the employee could reveal that the two events were not causally related. However, such a concern does not arise where the employer openly admits that the firing was retaliatory. We believe that strictly requiring a close temporal connection would allow employers to circumvent the statute. By simply delaying the retaliatory firing for several months, an employer could prevent a REDA claim from ever going forward, even where there is direct evidence of a wrongful motive.").

Next, while defendant is correct that the "costs" statement could be interpreted as being based upon the cost of plaintiff's absences and mistakes, we must consider the evidence in the light most favorable to plaintiff. *See Wiley* at 186, 594 S.E.2d at 811. In this light, the "costs" statement could easily be interpreted as referring to the cost of plaintiff's worker's compensation claim, particularly as the statement was made on the very day that plaintiff returned to work from his worker's compensation injury.

Also, while defendant may have "never acknowledged . . . [plaintiff] was a good worker[,]" defendant does acknowledge that "the issue is not whether the appellant worked hard or was punctual; it is whether the termination was a result of the filing of the workers' comp claim." While plaintiff's work performance is relevant in the analysis of defendant's motive in terminating plaintiff's employment, evidence that plaintiff was a "bad" worker does not preclude the possibility that plaintiff's employment was terminated in violation of REDA. In addition, plaintiff has presented evidence from Mr. West that plaintiff "was a very good employee" and from Mr. Latham that plaintiff was never absent without a doctor's note.

Lastly, although defendant was put on probation instead of immediately being terminated upon his return to work from his worker's compensation injury, we again note that "strictly requiring a close temporal connection would allow employers to circumvent the statute. By simply delaying the retaliatory firing for several months, an employer could prevent a REDA claim from ever going forward, even where there is direct evidence of a wrongful motive." *Tarrant* at 511, 593 S.E.2d at 813. One method of "delaying the retaliatory firing" could be putting an employee on probation. *Id.*

Defendant contends that this case is "on point" with *Salter*. In *Salter*, on 2 June 1999, the plaintiff fell at work and broke her foot. 155 N.C. App. at 687, 575 S.E.2d at 47. The plaintiff alleged that her supervisor was opposed to her seeking worker's compensation, while plaintiff's supervisor denied such allegations; however, "it has never been contested that plaintiff has failed to get all the workers' compensation to which she was entitled." *Id.* at 687, 575 S.E.2d at 48.

> After two and one-half months of light duty, on 16 August 1999, plaintiff reinjured her foot while away from work when she tripped at her home. . . . Plaintiff had a scheduled appointment with her physician on 24 August 1999, and planned to return to work after this appointment.
>
> Prior to August 24th, however, plaintiff was summoned to work to pick up her check and discuss some things with Frances Ivey[, plaintiff's supervisor]. On 23 August 1999, Ms. Ivey gave plaintiff her check along with a letter that had been faxed to her from defendant's head office.

*Id.* at 687-88, 575 S.E.2d at 48. The letter essentially informed plaintiff that her leave due to her injury would be without pay and that she

would be allowed to return to work if an appropriate position was available though one was not guaranteed; the letter also provided that a failure to follow the employer's "procedure" would result in "immediate dismissal." *Id.* at 688, 575 S.E.2d at 48. The plaintiff claimed that upon receiving the letter her supervisor informed her she must sign it or be terminated from employment. *Id.* Plaintiff filed suit, and defendant filed a motion for summary judgment which the trial court granted in defendant's favor. *Id.* at 689, 575 S.E.2d at 49. Plaintiff appealed because "the trial court erred in granting summary judgment to defendant because genuine issues of material fact existed as to whether defendant took retaliatory action against her because she filed a workers' compensation claim, in violation of REDA, N.C. Gen. Stat. § 95-240, *et. seq.* (2001)." *Id.* at 690, 575 S.E.2d at 49-50. This Court determined that

> [s]everal things are wrong with plaintiff's claim. First, there is no close temporal connection between plaintiff's instituting a workers' compensation claim and her termination. Second, plaintiff offers little more than mere speculation that defendant gave her the letter because she filed a workers' compensation claim. Nothing in the letter refers to workers' compensation. Plaintiff was allowed to return to work after filing her workers' compensation claim. Defendant filed all necessary papers for plaintiff to receive benefits, and plaintiff indeed received them. It was not until the second injury occurred and plaintiff was out of work for a full week following a sustained period of light duty was she offered the letter. To recover, plaintiff must show that her discharge was caused by her good faith institution of the workers' compensation proceedings. This she fails to do. Despite plaintiff's assertions that one of defendant's employees was less than cordial, her allegations do not raise a triable, material issue of fact. Thus, summary judgment on plaintiff's REDA claim is affirmed.

*Id.* at 691-92, 575 S.E.2d at 50-51 (2003) (citation, quotation marks, and ellipses omitted).

Here, we do not believe *Salter* is "on point" with the present case. In *Salter*, the plaintiff returned to work from her worker's compensation injury and worked for two and one-half months. *Id.* at 687, 575 S.E.2d at 48. It was only after the *Salter* plaintiff's second non-worker's compensation injury that she received the letter. *Id.* at 687-88, 575 S.E.2d at 48. Here, however, plaintiff was allegedly told he had "done nothing except 'cost the company money' " upon his return

McDOWELL v. CENT. STATION ORIGINAL INTERIORS, INC.

[211 N.C. App. 159 (2011)]

to work from his worker's compensation injury. In other words, in *Salter*, it appears that the plaintiff simply returned to work after her worker's compensation injury and proceeded to work for two and one-half months before she received the letter, *see id.*, but here, plaintiff was told he "cost the company money" and placed on probation the very day he returned to work from his worker's compensation injury.

Finally, defendant spends a large portion of its brief addressing various statements by Mr. West, Mr. Latham, and plaintiff and how these statements are "speculation[.]" While defendant is correct in noting that more than speculation is required to create a genuine issue of material fact, *Wiley* at 187, 594 S.E.2d at 811, we do not believe that the testimonies of Mr. West, Mr. Latham, and plaintiff can be completely characterized as such. Mr. West testified that Ms. Hyatt told him that they "need to get rid of James before he gets hurt again[;]" Mr. Latham testified that Ms. Hyatt put plaintiff on ninety-days probation for plaintiff "not [to] get hurt[;]" and during plaintiff's deposition he stated that when he returned from his worker's compensation injury, Ms. Hyatt told him he hadn't "done nothing but cost the company money. Now [he's] a risk to that company[.]" Accordingly, we conclude that there was a genuine issue of material fact as to why plaintiff was terminated from employment, and thus the trial court erred in granting summary judgment in favor of defendant.

## III. Conclusion

For the foregoing reasons, we reverse the trial court order granting summary judgment in favor of defendant.

REVERSED.

Chief Judge MARTIN and Judge STEPHENS concur.