An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-980

Filed 3 September 2025

Mecklenburg County, No. 23 CVS 6192

JUANITA CROUCH, Plaintiff,

v.

SUNCAKES NC, LLC, Defendant.

Appeal by Plaintiff from order entered 26 February 2024 by Judge Justin N. Davis in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 April 2025.

*Hensel Law, PLLC, by Wilson F. Fong, for Plaintiff-Appellant.*

*Jordan Price Wall Gray Jones & Carlton, PLLC, by Lori P. Jones, for Defendant-Appellee.*

GRIFFIN, Judge.

Plaintiff Juanita Crouch appeals from the trial court's order granting Defendant Suncakes NC, LLC's motion for a directed verdict. Plaintiff contends the trial court erred by: (1) granting Defendant's motion for a directed verdict on Plaintiff's unpaid wage and retaliation claims; and (2) excluding certain testimony proffered by Plaintiff. We hold the trial court did not err.

## I. Factual and Procedural Background

In September 2021, Defendant employed Plaintiff at one of its IHOP restaurants. Defendant hired Plaintiff as a tipped server and paid her $2.13 an hour plus tips.

As a tipped server, Plaintiff's responsibilities included performing "other assignments or tasks as assigned by the general manager, assistant manager or acting supervisor." As part of her duties, Plaintiff was expected to handle take-out orders. Plaintiff openly disliked handling take-out orders because it detracted from her ability to collect tips while waiting tables. Plaintiff voiced her frustration to management and requested to be hired as a hostess and paid standard minimum wage or to not be responsible for handling take-out orders. Management denied Plaintiff's requests.

On 14 December 2021, Plaintiff failed to appear for her scheduled shift without prior notice. As a result, on 16 December 2021, Plaintiff received a "Corrective Action Notice." After inquiring if she was being fired, management informed her she was not, but that she could not miss any more scheduled shifts. After working 9 January 2022, Plaintiff failed to appear for her next two scheduled shifts.

On 11 January 2022, Plaintiff was diagnosed with COVID-19. Plaintiff notified her general manager and informed her that she would need to quarantine for at least fourteen days. On 28 January 2022, when Plaintiff returned to work, new management informed her she had been terminated from employment.

On 31 March 2022, Plaintiff filed a Retaliatory Employment Discrimination Act ("REDA") complaint with the North Carolina Department of Labor. The Department found that there was reasonable cause to believe Defendant violated REDA and issued a 90-day right-to-sue letter. On 5 April 2023, Plaintiff filed an unpaid wage claim under the North Carolina Wage and Hour Act ("NCWHA") and a retaliation claim under REDA against Defendant in Mecklenburg County Superior Court.

Prior to trial, the parties submitted preliminary motions to the court. Plaintiff requested the jury be instructed to consider federal regulations, specifically the Fair Labor and Standards Act ("FLSA") and the Code of Federal Regulations ("CFR"), to support her claim she had been improperly paid as a tipped employee under the NCWHA. In response, Defendant filed a motion in limine to "[e]xclude any mention of any allegations, purported evidence, or theories of liability not plead in Plaintiff's complaint[,]" specifically referencing the federal provisions.

On 19 February 2024, Plaintiff's case came on for trial in Mecklenburg County Superior Court. After conducting a hearing on the parties' preliminary motions, the court found federal regulations governing tipped employees under the FLSA do not apply to the NCWHA because there are different standards for tipped employees under state and federal law. The court instructed the parties to limit the evidence to that which is relevant to North Carolina law because of the different standards and because Plaintiff did not assert a federal claim.

At the close of Plaintiff's evidence, Defendant moved for a directed verdict, which the trial court granted. On 26 February 2024, the court entered its written order granting Defendant's Motion. Plaintiff timely appeals.

## II.  Analysis

Plaintiff contends the trial court erred by: (1) granting Defendant's motion for a directed verdict on Plaintiff's unpaid wage and retaliation claims; and (2) excluding certain testimony proffered by Plaintiff.

## A. Directed Verdict

We review a trial court's ruling on a motion for a directed verdict de novo. *Higginbotham v. D'Amico*, 226 N.C. App. 441, 443, 741 S.E.2d 668, 670 (2013) (citation omitted). "A motion for a directed verdict presents the question whether the evidence is sufficient to carry the case to the jury." *Goodman v. Wenco Foods, Inc.,* 333 N.C. 1, 9, 423 S.E.2d 444, 447 (1992). "To survive a motion for directed verdict[], the non-movant must present 'more than a scintilla of evidence' to support its claim." *Morris v. Scenera Rsch.,* LLC, 368 N.C. 857, 861, 788 S.E.2d 154, 157 (2016) (quoting *Stark v. Ford Motor Co.,* 365 N.C. 468, 480, 723 S.E.2d 753, 761 (2012)). "While a scintilla is very slight evidence, the non-movant's evidence must still do more than raise a suspicion, conjecture, guess, surmise, or speculation as to the pertinent facts in order to justify its submission to the jury[.]" *Morris,* 368 N.C. at 861, 788 S.E.2d at 158 (citations and internal marks omitted).

The trial court must consider "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322–23, 411 S.E.2d 133, 138 (1991) (citation omitted). "It is only when the evidence is insufficient to support a verdict in the non-movant's favor that the motion should be granted." *Dockery v. Hocutt*, 357 N.C. 210, 217, 581 S.E.2d 431, 436 (2003).

### 1. *Unpaid wage claim*

Plaintiff contends the trial court erred by granting Defendant's motion for a directed verdict on Plaintiff's unpaid wage claim. Specifically, Plaintiff argues rules governing the FLSA apply to the NCWHA, and the trial court improperly limited the evidence at trial to that which is relevant to North Carolina law. As a result, Plaintiff argues the trial court granted Defendant's motion based on "a faulty legal premise." We disagree.

Here, Plaintiff brought a claim for unpaid wages under the North Carolina Wage and Hour Act. *See* N.C. Gen. Stat. §§ 95-25.1–95-25.25 (2023). Plaintiff specifically alleged in her complaint that Defendant "failed to pay [Plaintiff] minimum wage for [hostess] duties as required by statute." Over the course of litigation, Plaintiff developed this argument, contending that because section 95-25.3 of the NCWHA incorporates a federal provision interpreted by the CFR, the dual jobs regulation under the CFR should apply here.

Section 95-25.3 of the NCWHA requires employers pay their employees minimum wage. N.C. Gen. Stat. § 95-25.3(a). In North Carolina, minimum wage is the NCWHA statutory minimum, or the amount set forth in the FLSA, whichever is higher. *Id.* Minimum wage is currently $7.25 an hour. 29 U.S.C. § 206(a)(1)(c).

There is an exception to the minimum wage requirement for tipped employees. N.C. Gen. Stat. § 95-25.3(f) (2023). Under North Carolina law, a "'[t]ipped employee' means any employee who customarily receives more than twenty dollars ($20.00) a month in tips." N.C. Gen. Stat. § 95-25.2(14) (2023). Under the minimum wage statutory standard, "[t]ips earned by a tipped employee may be counted as wages only up to the amount permitted in section 3(m) of the [FLSA], 29 U.S.C. 203(m)[.]" N.C. Gen. Stat. § 95-25.3(f).

Section 3(m)(2)(A) of the FLSA allows employers to pay tipped employees a base wage of $2.13 an hour if the amount the employee receives in tips equals the minimum wage requirement. 29 U.S.C. 203(m)(2)(A). This is otherwise called a tip credit. If a tipped employee does not earn $7.25 an hour, including the base wage of $2.13, the employer must pay the difference. 29 U.S.C. 203(m)(2)(A)(i)-(ii).

The FLSA is interpreted by the CFR, which at the time of trial included a provision prohibiting employers from taking a tip credit for work performed by a tipped employee outside of the tipped occupation. 29 C.F.R. § 531.56(f) (2023). The provision also defined tip-producing work under federal standards. 29 C.F.R. § 531.56(f). Section 531.56(f) has since been declared unconstitutional by the Fifth

Circuit, *see generally Restaurant Law Center v. U.S. Dep't of Labor*, 120 F.4th 163 (5th Cir. 2024), but Plaintiff maintains the CFR's dual job regulation underpinning section 531.56(f) still applies and stands for the same proposition. The CFR's dual job provision states the following:

> (e) Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (2023).

Plaintiff contends the dual jobs provision applies here because the NCWHA states "[t]ips earned by a tipped employee may be counted as wages only up to the amount permitted in section 3(m) of the [FLSA], 29 U.S.C. 203(m)," and section 3m of the FLSA is interpreted by the CFR which contains the dual jobs provision. Plaintiff argues she falls under the FLSA's dual jobs provision and should have been paid standard minimum wage when performing non-tipped work; specifically, take-out orders.

Despite Plaintiff's argument that the CFR applies to the NCWHA, it is unnecessary for this Court to engage in that analysis based on Plaintiff's claim and the evidence presented. Plaintiff only asserted a claim under the NCWHA, and she stipulated she made $7.25 an hour for all hours worked. At trial, Plaintiff provided the following testimony:

> Q: [Plaintiff], you're aware that you've stipulated to the fact that you were paid minimum wage of 7.25 an hour while you worked at [Defendant].
>
> A. Is that when I get paid 2.13 an hour and you're telling me the difference was made up to come up with 7.25?
>
> Q. Correct.
>
> A. Okay. Then, yes. Yes.

Plaintiff's attorney also acknowledged the stipulation and fact that Plaintiff made minimum wage, including tips, for all hours Plaintiff worked. Furthermore, the trial court granted Defendant's motion in limine regarding the federal provisions, finding that "the complaint specifically alleges a claim only under the North Carolina Act," which "is specific as to the definition of a tipped employee[,]" and, accordingly, "our code provisions are not defining tipped employee as defined under federal law." As a result, the trial court concluded "the evidence should be limited in this case to that which is relevant to the North Carolina law claim. There isn't a federal tip claim, a wage and hour claim here, and so it should be limited to that."

Based on the evidence presented, the question of whether the evidence was

legally sufficient to take the case to the jury and support a verdict on Plaintiff's unpaid wage claim must be resolved in Defendant's favor. Plaintiff cannot show she was paid improperly under North Carolina law. Plaintiff stipulated to and testified that she was paid at least $7.25 per hour; there is no evidence that Defendant violated the NCWHA or that there were any unpaid minimum wages. *See* N.C. Gen. Stat. § 95-25.22 (2023) ("Any employer who violates section 95-25.3 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, their unpaid overtime compensation, or their unpaid amounts." (citation modified)). Thus, because Plaintiff cannot show she was underpaid for any hours she worked, the evidence is insufficient to support a NCWHA claim and overcome Defendant's motion.

Accordingly, we hold the trial court did not err by granting Defendant's motion for a directed verdict on Plaintiff's unpaid wage claim.

### 2. *Reduced Wage Claim*

Plaintiff contends Defendant violated section 95-25.13 of the NCWHA. N.C. Gen. Stat § 95-25.13 (2023). Specifically, Plaintiff argues Defendant illegally reduced Plaintiff's wages without prior notice by requiring Plaintiff to perform non-tipped duties as a tipped employee.

Despite Plaintiff's argument, Plaintiff did not file a claim under section 95-25.13 and the issue was not raised at trial. Plaintiff only mentioned section 95-25.13 in proposed jury instructions; instructions that were never brought before the jury.

This Court has long recognized "that issues and theories of a case not raised below will not be considered on appeal." *Westminister Homes, Inc v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309, 554 S.E.2d 634, 641 (2001). Here, because Plaintiff did not file a section 95-25.13 claim, and it was not addressed at trial, we will not address it for the first time on appeal.

### 3. Retaliation Claim

Plaintiff contends the trial court erred by granting Defendant's motion for a directed verdict on Plaintiff's retaliation claim. Specifically, Plaintiff argues she presented sufficient evidence to support her claim, and that she is entitled to an adverse inference of retaliatory termination because Defendant failed to produce highly probative evidence explaining the reason for her termination. We disagree.

"'The North Carolina Retaliatory Employment Discrimination Act (REDA) prohibits discrimination or retaliation against an employee for filing a worker's compensation claim.'" *McDowell v. Cent. Station Original Interiors, Inc.,* 211 N.C. App. 159, 162, 712 S.E.2d 251, 254 (2011) (quoting *Wiley v. United Parcel Service, Inc.,* 164 N.C. App. 183, 186–87, 594 S.E.2d 809, 811 (2004)). To state a claim under REDA, a plaintiff must demonstrate three key elements: "(1) that he exercised his rights as listed under section 95-241(a), (2) that he suffered an adverse employment action, and (3) that he alleged retaliatory action was taken because the employee exercised his rights under section 95-241(a)." *McDowell,* 211 N.C. App. at 162, 712 S.E.2d at 254 (citation modified). "If the plaintiff presents a prima facie case of

retaliatory discrimination, then the burden shifts to the defendant to show that he would have taken the same unfavorable action in the absence of the protected activity of the employee." *Id.* (citation modified).

To exercise one's rights under section 95-241(a), an employee must carry out or threaten to carry out one of the following actions: "[f]ile a claim or complaint, initiate an inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person [regarding their rights under the NCWHA]." N.C. Gen. Stat. § 95-241(a)(1) (2023).

Here, Plaintiff argues she exercised her rights under section 95-241(a) by initiating an inquiry when she asked her managers to be paid minimum wage for handling take-out orders or to be relieved of performing that non-tipped duty. We disagree.

We have held that merely talking to supervisors about a concern is not a true initiation of an inquiry and does not rise to the level of protected activity under REDA. *See Pierce v. Atl. Grp. Inc.*, 219 N.C. App. 19, 28, 724 S.E.2d 568, 575 (2012) (holding the trial court did not err by dismissing the plaintiff's REDA claim because the plaintiff only spoke to his supervisors about his concerns and failed to file any type of complaint or report his concerns regarding occupational health and safety to the company's ethics hotline); *see also Whiting v. Wolfson Casing Corp.,* 173 N.C. App. 218, 222, 618 S.E.2d 750, 753 (2005) ("Asking an employer to pay for a doctor's visit or other medical services is merely an abstract assertion and not an assertion of rights

under the Act. Rather, it is the filing of a workers' compensation claim that triggers the statutory and common law protection against employer retaliation in violation of public policy.").

Here, similar to *Pierce* and *Whiting*, Plaintiff merely had a conversation with her managers expressing her frustrations but failed to pursue any other action. Additionally, despite having the resources available to her, Plaintiff chose not to voice her concerns to the appropriate channels laid out by the company. Defendant's employee handbook states that if a pay concern arises, the employee should first report the issue to her supervisor, and, if it is not corrected, the employee should call the company hotline. Although Plaintiff could have called the hotline to initiate an inquiry, investigation, or inspection, she did not, and there is no record evidence Plaintiff carried out an action to exercise her protected rights under section 95-241(a).

Accordingly, Plaintiff failed to assert a retaliation claim because she failed to meet prong one. N.C. Gen. Stat. § 95-241(a). Plaintiff did not exercise her rights under section 95-241(a). Thus, we hold the trial court properly granted Defendant's motion for a directed verdict on Plaintiff's retaliation claim. Moreover, because Plaintiff failed to assert a proper retaliation claim, we need not address Plaintiff's adverse inference argument.

## B. Excluding Testimony

Next, Plaintiff contends the trial court erred by excluding certain testimony offered by Plaintiff. Specifically, Plaintiff argues statements made by her supervisor

were not hearsay because they were offered as verbal acts or alternatively qualify as opposing party admissions under the hearsay exception. We disagree.

This Court reviews a trial court's decision to exclude or admit evidence under an abuse of discretion standard. *Cash v. Cash*, 284 N.C. App. 1, 7, 874 S.E.2d 653, 658 (2022). "An abuse of discretion occurs when the trial court's decision is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 279, 891 S.E.2d 100, 121 (2023) (citation and internal marks omitted). "As a general matter, evidentiary errors are considered harmless unless a different result would have been reached at trial." *Keller by & through Keller v. Deerfield Episcopal Ret. Cmty., Inc.*, 271 N.C. App. 618, 630, 845 S.E.2d 156, 164 (2020) (citation and internal marks omitted). "[T]he burden is on the appellant to not only show error, but also to show that she was prejudiced and a different result would have likely ensued had the error not occurred." *Id.* (citation and internal marks omitted).

### 1. *Verbal Acts*

At trial, Plaintiff sought to offer statements of what her supervisors told her to do, including splitting time between take-out orders and serving duties; their response to her request to get paid as a hostess if doing hostess work; staying out of work because of COVID-19; and whether she was eligible for rehire. Defense counsel objected to the proposed testimony and Plaintiff argued the statements were not hearsay because they were not being offered for the truth of the matter asserted.

Plaintiff offered the statements as verbal acts. The trial court sustained Defendant's objections and did not admit the statements. We hold the trial court did not abuse its discretion excluding the statements.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. R. Evid. 801(c) (2023). However, "[i]f a statement is offered for some purpose other than proving the truth of the matter asserted, it is not inadmissible hearsay." *Sterling v. Gil Soucy Trucking, Ltd.*, 146 N.C. App. 173, 177, 552 S.E.2d 674, 677 (2001) (citation omitted). "The Hearsay Rule does not preclude a witness from testifying as to a statement made by another person when the purpose of the evidence is not to show the truth of such statement but merely to show that the statement was, in fact, made." *State v. Kirkman,* 293 N.C. 447, 455, 238 S.E.2d 456, 461 (1977).

Under North Carolina law, verbal acts are not considered hearsay. N.C. R. Evid. 801(c) (commentary) (citing *Brandis on North Carolina Evidence* § 141 (1982)). A verbal act is a statement that "affect[s] the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." *Id.* The statement's legal relevance does not depend on whether the words are true. *Gurganus v. Guar. Bank & Tr. Co.,* 246 N.C. 655, 660, 100 S.E.2d 81, 84 (1957). The mere fact a statement was made may bear legal significance. *See id.* ("[T]he probative force of evidence admissible under the verbal act doctrine depends wholly upon the fact that the

- 14 -

declarations were made, without regard to the truth or falsity of the matters asserted therein.").

In *Gurganus v. Guaranty Bank & Trust Co.*, our Supreme Court held for a statement to qualify as a verbal act, the declaration must accompany conduct "to which it is desired to attach some legal effect" and "the probative value" of the statement must not depend on the truth of the matter asserted. *Id.* at 659–60, 100 S.E.2d at 84. There, the plaintiff instituted an action against an estate administrator to recover on two promissory notes the decedent had allegedly executed and delivered to the plaintiff. *Id.* at 657, 100 S.E.2d at 82. At trial, the defendant argued the decedent did not sign the notes and offered testimony of the decedent's statements that the plaintiff had made persistent efforts to borrow money from the decedent. *Id.* at 657–58, 100 S.E.2d at 82–83. The trial court admitted the testimony over the plaintiff's objection and ruled in favor of the defendant. *Id.* at 658, 100 S.E.2d at 83.

On appeal, the plaintiff challenged the testimony admitted at trial, and the defendant argued the testimony qualified as a verbal act. *Id.* at 659, 100 S.E.2d at 84. Our Supreme Court disagreed with the defendant, holding the verbal act doctrine did not apply and awarded a new trial. *Id.* at 660, 100 S.E.2d at 84. The Court reasoned the alleged declarations of the decedent regarding the plaintiff asking to borrow money "did not accompany conduct to which it was desired to give legal effect, and [] the probative value of the [] testimony, . . . depend[ed] wholly upon the truth of the matters asserted by [the decedent] in the declarations attributed to her." *Id.*

"If [the] plaintiff made persistent efforts to borrow money from [the decedent] . . . , it may be clearly inferred . . . she was not indebted to [the] plaintiff on promissory notes or otherwise." *Id.* at 658, 100 S.E.2d at 83. As a result, "[the]evidence was calculated to weigh heavily against [the] plaintiff in the minds of the jurors" and the Court ordered a new trial. *Id.*

Here, like in *Gurganus*, the challenged testimony did not accompany conduct "to which it [was] desired to attach some legal effect" and "the probative value" of the statements depended wholly upon the truth of the matter asserted. *Id.* at 659–60, 100 S.E.2d at 84. Plaintiff's supervisors' statements regarding Plaintiff splitting time between duties, Plaintiff's request for standard minimum wage, Plaintiff's COVID-19 diagnosis, and Plaintiff's employment status were not associated with any legal conduct and were offered to prove the truth of the matter asserted. Plaintiff wanted to prove the truth of the information conveyed, not the mere fact that something was said. Thus, the verbal act doctrine does not apply here, and the trial court properly excluded the statements as inadmissible hearsay.

### 2. *Opposing Party Admissions*

Plaintiff argues the statements also qualify under the hearsay exception for opposing party admissions.

Opposing party admissions are recognized as an exception to the hearsay rule. N.C. R. Evid. 801(d) (2023). A statement qualifies as an admission by a party-opponent and is admissible during trial if it is offered against a party and it is:

> (A) his own statement, in either his individual or a representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, or (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship or (E) a statement by a coconspirator of such party during the course and in furtherance of the conspiracy.

N.C. R. Evid. 801(d).

Plaintiff argues Rule 801(d)(A) or (D) applies here because they were statements made by Defendant or Defendant's agents. However, Plaintiff did not raise this argument at trial.

Our courts have long recognized that parties cannot raise a theory on appeal that was not raised at trial. *See Wood v. Weldon*, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) ("As has been said many times, the law does not permit parties to swap horses between courts in order to get a better mount, meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court." (citation modified)). Thus, because Plaintiff did not raise the opposing party admissions argument at trial, Plaintiff's argument is waived.

### 3. *No Prejudice*

As held above, the trial court did not err by excluding the proffered testimony. But even if it was error, Plaintiff cannot show prejudicial error. Plaintiff has not demonstrated that had the testimony in question been admitted, the outcome of the trial would have been different. *Keller*, 271 N.C. App. at 630, 845 S.E.2d at 164. The challenged testimony is duplicative of additional evidence offered at trial. *See Gaddy v. N.C. Nat'l Bank*, 25 N.C. App. 169, 173, 212 S.E.2d 561, 564 (1975) ("It is well settled that exception to the admission of evidence will not be sustained when evidence of like import has theretofore been, or is thereafter, introduced without objection.").

Here, Plaintiff testified she complained multiple times about her responsibility over take-out orders; that one of her managers had a negative reaction to her request for standard minimum wage when working take-out; and that she reported her COVID-19 diagnosis to her manager and informed her she would need to quarantine for fourteen days. Thus, the jury heard through Plaintiff's own testimony the same concerns Plaintiff sought to offer through her supervisors' statements. Accordingly, the evidence is duplicative, and Plaintiff cannot show prejudice.

## III.   Conclusion

For the aforementioned reasons, we hold the trial court properly granted Defendant's motion for a directed verdict on Plaintiff's unpaid wage and retaliation claims and properly excluded certain testimony proffered by Plaintiff.

AFFIRMED.

Judges ZACHARY and ARROWOOD concur.

Report per Rule 30(e).